JORGE LUIS PEREIRA y CLEMENTE MEDINA ORTIZ, demandantes y recurridos, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrente.

Número: R-63-74 Resuelto: 16 de febrero de 1965

*Rodolfo Cruz Contreras, Procurador General Interino, y Américo*
*Serra, Procurador General Auxiliar,* abogados del recurrente;
*C. H. Juliá y Ángel Roberto Díaz,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Los recurridos Jorge Luis Pereira y Clemente Medina Ortiz demandaron conjuntamente al Estado Libre Asociado de Puerto Rico en reclamación de daños por los que sufrieran como consecuencia de una colisión de sus respectivos vehículos, ocurrida el 23 de junio de 1959 a las 8 de la mañana en la intersección de la Avenida Barbosa y la Avenida 65 de Infantería. La Sala sentenciadora halló que el Estado Libre Asociado había sido negligente y concedió $2,845 a Clemente Medina Ortiz y $1,775.64 a Jorge Luis Pereira. La cuantía de esos daños fue probada. Como cuestión de realidad, el Estado Libre Asociado no la impugna en el recurso ahora ante nosotros. Nos presenta una sola imputación de error:—"Erró el Tribunal al concluir, como cuestión de hecho y de derecho, que el accidente que produjo los daños se debió única y exclusivamente a la culpa y negligencia del demandado, toda vez que tal conclusión no está sostenida por la prueba que desfiló ante dicho Tribunal."

Los hechos en el récord demuestran que la colisión ocurrió en el centro de la intersección ya mencionada y debajo del semáforo, que en esa fecha estaba situado también en el centro de la misma. Demuestran de manera no disputada que

en el momento del accidente el semáforo estaba funcionando defectuosamente. Mantenía la luz verde de manera estable para el tránsito que discurría de oeste a este en la Avenida 65 de Infantería y daba el cambio de luces para el tránsito que se acercaba por la Avenida Barbosa. Ya cerca de la intersección la luz cambió a verde a favor del demandante Clemente Medina Ortíz quien conducía su propio vehículo, y penetró en ella. En el centro chocaron su vehículo y el del codemandante Jorge Luis Pereira guiado por un chofer que venía bajando de Carolina hacia Río Piedras.

El Policía estatal Sr. Carmelo Alvarado, adscrito a la División de Tránsito declaró como testigo de los demandantes. Aseguró que efectivamente la luz estaba defectuosa en el sentido de que quedaba verde para las dos direcciones. Esa mañana, de 7 a 7 y media él había llamado a la Comandancia por el radio de su automovil e informó que la luz estaba defectuosa. De la Comandancia le contestaron "copiado" que quería decir "entendido". Otros testigos confirmaron el hecho de la condición anormal de las luces. Además del defecto de la luz, el Policía Alvarado notó que el semáforo estaba bajo.

Como parte de la prueba del recurrente Estado Libre Asociado declaró el testigo Filiberto Correa González. Manifestó que para la fecha del accidente él era empleado de Obras Públicas, en el Negociado de Operaciones de Tránsito y Señales. Era ayudante electricista. Que como parte de sus funciones él hacía recorridos todos los días inspeccionando los distintos semáforos del área metropolitana. Dos días antes del accidente, el domingo 21 de junio, halló que el semáforo de esa intersección funcionaba normalmente pero encontró la caja unos tres pies más baja e informó al Cuartel de la Policía para que tomaran precauciones con los camiones. Manifestó que había habido un accidente que partió uno de los postes de hormigón que sostenían el semáforo y éste se había bajado. El poste "no se había caído por completo, estaba medio partido y tendido abajo." Le dijo a un policía que había

que poner un guardia allí para evitar que hubieran más consecuencias y tomaran precauciones con los "*trucks*". Fue al Cuartel de Río Piedras y notificó el hecho. Ese domingo mandaron un guardia que se fue con el testigo. El testigo rindió un informe a su propia oficina de Obras Públicas. Tal condición del semáforo se arregló el próximo miércoles, ya pasado el accidente.

 El testigo anterior admitió la posibilidad de que la luz verde continuara puesta, por varias razones que explicó, entre ellas un alambre pelado. No obstante, el recurrente produjo el testimonio pericial de un ingeniero, al efecto de que técnicamente era absolutamente imposible el que la luz verde estuviera verde a la vez en direcciones contrarias. Respetamos el testimonio pericial, pero una prueba en el récord que convence demostró que de hecho, esa era la situación allí al ocurrir el accidente. Quizás, una jugarreta de esas que a veces la máquina le hace al hombre a pesar de la técnica. A los efectos del error señalado, las conclusiones de hecho de la Sala sentenciadora se sostienen por la evidencia en el récord. Veamos si la sentencia es correcta en derecho.

 El recurrente invoca ciertos principios generales expuestos por tribunales y tratadistas americanos a los efectos de que un semáforo es un dispositivo que provee el Estado para ayudar a discurrir el tránsito en forma ordenada y segura, y que la presencia de un semáforo en una intersección o en cualquier otro sitio no releva en forma alguna a los conductores de tomar todas aquellas medidas y precauciones que la ley ordena o la prudencia aconseja para evitar accidentes. Estamos en perfecto acuerdo. Esos principios son buenos allá y son buenos aquí. Responden a normas de buen juicio y de circunspección, y de sentido común. El funcionamiento defectuoso de un semáforo, que como todo aparato mecánico es susceptible de fallar, no debe ser una justificación para el conductor que no ha puesto todo su cuidado y prudencia para evitar accidentes. Por otra parte, la luz verde

tampoco debe ser un mandato para que un conductor se le tire encima a cualquier vehículo o persona que esté a su paso, aun cuando estos últimos no estuvieran en su derecho. Como apuntamos en *Briales Aldrich* v. *Torres*, 89 D.P.R. 815 (1964), lo anteriormente expuesto son buenas normas de conducta social y no hay porque repudiarlas, pero como apuntamos también en *Briales,* cada caso invita a sus propias reflexiones.

■ En éste, el Estado no interpuso, al contestar la demanda, actos de negligencia por parte de los demandantes o de violación de las normas de ley sobre el tránsito. Hay prueba documental en el récord admitida sin objeción que demuestra que las autoridades judiciales, en la investigación hecha a raíz de los sucesos, determinaron que éste había sido un accidente casual. No hallaron infracción de ley alguna por parte de los conductores. Aun cuando los conductores no violaran la ley o no actuaran imprudentemente, el accidente podía producirse por el funcionamiento defectuoso de este semáforo. El récord no indica que pudo deberse a cosa otra alguna. Ya con este supuesto, el problema que resta es el determinar si aun así el Estado debe responder en daños. Al Estado no se le debe considerar como un asegurador absoluto del buen funcionamiento de sus semáforos al extremo de que debe responder siempre que hubiere un defecto e indistintamente en toda circunstancia.

■ En las circunstancias de este caso debe responder porque los hechos demuestran que careció de sentido de previsión. Se responde del suceso que puede preverse, y previsto, no fuere inevitable. Art. 1058 del Código Civil, ed. 1930. El que ocurra un accidente de automóvil por razón del funcionamiento imperfecto de un semáforo, sobre todo en un área de tránsito denso, es un suceso que cae en la esfera de acción de lo probable. Luego, debió preverse. La previsión es madre de la diligencia en tanto lleva a actuar prudentemente. Art. 1057 Código Civil. Véanse: Escolio 1, *Márquez* v. *Puerto*

*Rico Telephone Co.*, 88 D.P.R. 429 (1963) ; *Ramos* v. *Carlo*, 85 D.P.R. 353, (1962), a la página 358 y ss. En el grado en que se es diligente no prospera la negligencia, y se evita el ·daño.

La posición de este semáforo estaba en condiciones anormales desde días antes por motivo de un accidente anterior. Cuando menos, y después del aviso e informe del policía de tránsito dado entre una y media hora antes de ocurrir el accidente, en el sentido de que la luz de ese semáforo contenía el defecto apuntado, las circunstancias demandaban que el Estado hubiera situado allí al mismo policía o a cualquier otro agente para hacerse cargo de la situación, más particularmente, en una intersección de dos avenidas principales y a la hora de intenso movimiento.

Ante todas las circunstancias que señala el récord, un accidente allí por la condición anormal de la luz era probable. El Estado incurrió en culpa y negligencia por omisión, al no preverlo y tomar las precauciones que la prudencia aconsejaba.

*Se confirmará la sentencia que declaró con lugar la demanda.*