María Damiani Franco, demandante y recurrente, *v.* Elías Donatiu Maldonado et al., demandados y recurridos. María Damiani Franco, demandante y recurrida, *v.* Elías Donatiu Maldonado et al., demandados y terceros demandantes y recurridos, *v.* El Estado Libre Asociado, tercero demandado-recurrente, Antonio Sánchez Cuartero et al., demandantes y recurridos, *v.* Elías Donatiu Maldonado et al., demandados y terceros demandantes y recurridos, *v.* El Estado Libre Asociado, tercero demandado y recurrente.

*Números:* R-65-116, *Resueltos:* 25 de marzo de 1968
R-65-117

830

*Gaspar Gerena Bras,* abogado de la demandante-recurrente-recurrida; *J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Procurador General Interino,* y *Adaljisa Díaz de Collazo, Procuradora General Auxiliar,* abogados del tercero demandado-recurrente; *Juan Enrique Géigel, Guillermo Silva, Hernán G. Pesquera* y *Miguel A. Jiménez Muñoz,* abogados de los demandados, y terceros demandantes-recurridos.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El día 15 de diciembre de 1961 estaba anunciada la llegada a Puerto Rico del Presidente Kennedy. Poco tiempo después del mediodía empezó a congregarse el público a todo lo largo de la Avenida Baldorioty de Castro. Las personas

allí congregadas cruzaban la avenida de uno a otro lado. Esperaban la comitiva presidencial.

En la intersección de la Calle Las Flores con la Avenida Baldorioty de Castro, ocurrió durante la tarde, un accidente de automóviles en que intervinieron dos vehículos: uno que discurría por la Calle Las Flores en dirección Norte y otro que se dirigía al Oeste por la Avenida. Como consecuencia del choque resultaron lesionados una peatona, María Damiani Franco y ocupantes de los dos vehículos. La peatona demandó a los conductores y dueños de ambos automóviles y a la compañía aseguradora de uno de éstos. Los demandados, Donatiu, la corporación dueña del vehículo que éste conducía y su compañía aseguradora radicaron demanda contra coparte, así como demanda de tercero contra el Estado alegando que era responsable por la actuación del agente del orden público que dio paso indebidamente al automóvil que discurría por la Calle Las Flores. Los conductores de los vehículos se demandaron mutuamente. En el caso radicado contra Donatiu éste radicó demanda de tercero contra el Estado Libre Asociado.

El tribunal de instancia describió así el accidente:

"6. Entre 3:00 y 3:30 del 15 de diciembre de 1961 Rosario Prado de Sánchez conducía el automóvil Chevrolet por la Calle Las Flores en dirección de sur a norte, viajando con ella en el vehículo una compañera y un compañero de trabajo. Al aproximarse a la intersección de dicha calle con la Avenida Baldorioty el Capitán de la Policía, Alfredo Ortiz Aponte, que estaba parado más o menos entre medio de la calle marginal que corre paralela a la Avenida Baldorioty por el lado sur y la avenida propiamente, ordenó a la conductora detener la marcha.

7. La señora Prado de Sánchez obedeció la orden y detuvo su automóvil. Instantes más tarde, el mismo Capitán Ortiz Aponte dio a la señora Prado de Sánchez la señal de proseguir su marcha. La señora Prado de Sánchez obedeció la señal, y puso en marcha su vehículo en dirección hacia el sur. Cruzó la calle marginal que corre paralela a la Avenida Baldorioty por el lado sur, cruzó también el trozo o porción de la avenida por el cual

circulaba el tránsito de San Juan hacia el aeropuerto, y continuó su marcha para cruzar la otra mitad o porción de la Avenida Baldorioty, o sea, la vía del lado norte por la cual circulaba el tránsito del aeropuerto hacia San Juan.

8. Cuando el automóvil Chevrolet entró a esa porción o trozo de la Avenida Baldorioty, ocurrió el choque con la Station Wagon que conducía Elías Donatiu Maldonado, acompañado de un cliente, corriendo por el carril del lado derecho, o sea, el extremo norte de la Avenida Baldorioty, a velocidad moderada.

9. En los momentos que el vehículo conducido por Donatiu Maldonado, corriendo en dirección de este o oeste por la Avenida Baldorioty, se aproximaba a la intersección de dicha avenida con la Calle Las Flores, la luz verde del semáforo instalado en dicha intersección estaba a favor de Donatiu Maldonado.

10. En ese momento no había ningún policía en el trozo o porción del lado norte de la Avenida Baldorioty que estuviese controlando o dirigiendo manualmente el tránsito que circulaba por dicho trozo de la avenida en dirección de este a oeste y Donatiu Maldonado al ver que tenía a su favor la luz del semáforo continuó su marcha por la Avenida Baldorioty y se internó en la intersección de ésta con la Calle Las Flores, siendo chocada la Station Wagon que él conducía por el automóvil Chevrolet que conducía la señora Prado de Sánchez.

11. La Station Wagon conducida por Donatiu Maldonado recibió por su parte izquierda delantera el impacto de la parte derecha delantera del vehículo conducido por la señora Prado de Sánchez. Como resultado del choque, el automóvil Chevrolet fue desviado hacia la izquierda y quedó estacionado en el segundo carril del lado norte de la Avenida Baldorioty mirando en dirección hacia San Juan.

12. Al recibir la Station Wagon el impacto del Chevrolet por la puerta izquierda delantera, el vehículo se desvió, montándose entonces sobre la isleta de seguridad entre la Avenida Baldorioty y la calle marginal al lado norte de la avenida. En ese sitio, arrolló y estropeó a María Damiani Franco, que estaba allí parada en espera de la oportunidad para cruzar la Avenida Baldorioty y llegar a la Calle Las Flores. Después de haber arrollado a María Damiani Franco, la Station Wagon, completamente descontrolada, continuó su marcha adelante, bajando por una pequeña pendiente en la calle marginal al lado norte de la Avenida

Baldorioty y recorrió por la misma un trecho de aproximadamente cincuenta o sesenta pies."

El tribunal de instancia concluyó como cuestión de derecho que "no [tenía] la más ligera duda de que el choque entre el automóvil Chevrolet conducido por Rosario Prado de Sánchez y la Station Wagon conducida por Elías Donatiu Maldonado, fue causado por la negligencia y el descuido de los funcionarios de la Policía Estatal a cargo de la dirección y control del tránsito de vehículos en la intersección de la Avenida Baldorioty y la Calle Las Flores el día de la llegada del Presidente Kennedy."

A tenor con esta conclusión, se declaró sin lugar la demanda interpuesta por María Damiani Franco contra los conductores y dueños de los automóviles envueltos en el accidente así como contra la compañía aseguradora de uno de éstos, pero "habiéndose entablado . . . demanda contra tercero, contra el Estado Libre Asociado y habiendo sido probado a la satisfacción del tribunal en este caso que el accidente fue causado por la única y exclusiva negligencia de los oficiales policíacos al servicio del Estado Libre Asociado de Puerto Rico, el tribunal resuelve y concluye que de conformidad con la jurisprudencia establecida en Estados Unidos [citas] la demanda de María Damiani Franco debe ser considerada enmendada para conformarla a la prueba incluyendo en la misma al Estado Libre Asociado de Puerto Rico como parte demandada en la acción original." Condenó al Estado Libre Asociado a pagar una indemnización de $15,000.

Declaró sin lugar la demanda entablada por Donatiu contra Rosario Prado y su esposo Antonio Sánchez Cuartero y la radicada por éstos contra Donatiu, el dueño del vehículo que éste conducía, y la compañía aseguradora, pero condenó en este último caso, al Estado Libre Asociado como tercero demandado, a pagar a los demandantes la cantidad de $1,800 por los daños al automóvil Chevrolet y la cantidad de $1,200

como indemnización por las lesiones personales que en el accidente sufrió la señora Prado.

Recurrieron en revisión María Damiani Franco y el Estado Libre Asociado. Expedimos ambos recursos. La señora Damiani "no está conforme con aquella parte de la sentencia que declara sin lugar su demanda en contra de los demandados Elías Donatiu Maldonado, Jack Feldstein, Inc. y Fireman's Fund Insurance Company, por lo cual solicita que se revise dicha parte por haber el Honorable Tribunal *a quo* errado en la apreciación de la prueba al declarar que el demandado Elías Donatiu Maldonado 'no realizó ningún acto o incurrió en ninguna omisión que constituyese negligencia o descuido de su parte'." El Estado Libre Asociado plantea una cuestión de procedimiento: que habiendo sido llevado al pleito para responderle a los demandados y éstos ser exonerados, no procede condenarlo a pagarle a la demandante, sin embargo en su alegato considera el aspecto de su responsabilidad.

¿Es correcta la evaluación que de los hechos hace él tribunal sentenciador imponiéndole la responsabilidad del accidente al Estado Libre? Entendemos que no. El derecho aplicable no justifica esa conclusión.

■ Estableció la prueba que cuando ocurrió el accidente había un gran número de personas a lo largo de la Avenida Baldorioty, así como cruzando de un lado a otro la Avenida esperando la llegada del Presidente Kennedy. En la intersección donde ocurrió el accidente había un grupo de policías dirigiendo el tránsito. La señora Prado conducía su automóvil Chevrolet por la Calle Las Flores, y un agente del orden le ordenó que se detuviera al llegar a la calle marginal. Así lo hizo emprendiendo la marcha nuevamente cuando el agente se lo ordenó. Cruzó la calle marginal, la trocha sur de la avenida y cuando comenzaba a cruzar la trocha norte, ocurre el choque con la *station wagon* conducida por Donatiu. La *station wagon* luego del impacto se desvió "montándose

entonces sobre la isleta de seguridad entre la Avenida Baldorioty y la calle marginal al lado norte de la Avenida. En ese sitio arrolló y estropeó a María Damiani Franco que estaba allí parada . . . . Después de haber arrollado a María Damiani Franco, la Station Wagon, completamente descontrolada continuó su marcha adelante bajando por una pequeña pendiente en la calle marginal al lado norte de la Avenida Baldorioty y recorrió por la misma un trecho de aproximadamente cincuenta o sesenta pies." Lo ocurrido después del impacto demuestra que la *station wagon* era conducida a una velocidad en exceso de la que las circunstancias presentes en la intersección aconsejaban. Teniendo en cuenta las condiciones de aglomeración de personas que en aquellos momentos allí había, era deber del conductor conducir su vehículo con más cuidado que de costumbre, y el hecho que tuviera la luz verde a su favor no lo autorizaba a seguir adelante, sin tomar precauciones.([1]) Como expresamos en *Pereira* v. *E.L.A.*, 91 D.P.R. 750, 753 (1965): ". . . la luz verde tampoco debe ser un mandato para que un conductor se le tire encima a cualquier vehículo o persona que esté a su paso aun cuando estos últimos no estuvieran en su derecho." Ver además *Briales Aldrich* v. *Torres*, 89 D.P.R. 815 (1964).

En *Lewis* v. *Quinn*, 101 A.2d 382 (Penn. 1954), la Corte Suprema de Pennsylvania ratificando lo expuesto en un caso anterior expresó lo que nos parece la mejor exposición de la regla a observar por un conductor al cruzar una intersección:

---

([1]) Del contrainterrogatorio del conductor Donatiu copiamos:

"P. Y que venía fijándose a la luz verde?

R. Venía mirando hacia el frente.

P. A la luz, y no se percató de lo que estaba a los lados?

R. Las luces estaban trabajando normalmente y continué hasta frente a la luz.

P. Pero no miró a los lados usted?

R. No tengo porque mirar a los lados."

". . . nuestros casos han demostrado claramente la proposición fundamental de que se requiere el debido cuidado en las intersecciones de las calles bajo todas las circunstancias, ya sea que estén o no presentes una señal o un oficial de tránsito . . . . Se ha establecido firmemente que un conductor que tiene el derecho de paso en una intersección continúa con la obligación de observar el debido cuidado dentro de las circunstancias, para evitar una colisión con un vehículo que se aproxime. *Alperdt* v. *Paige,* 292 Pa. 1, 140 A. 555; *Robinson* v. *Berger,* 295 Pa. 95, 144 A. 899; *Campagna* v. *Lyles,* 298 Pa. 352, 148 A. 527; *Curry* v. *Willson & Sons,* 301 Pa. 467, 152 A. 746; *Bailey* v. *C. Lewis Lavine, Inc.,* 302 Pa. 273, 153 A. 422; *Frank* v. *Pleet,* 87 Pa. Super. 494 . . . . Debe estar vigilante, debe ejercer un alto grado de cuidado, debe tener su carro bajo un completo control y debe mirar y atender todo lo que sea visible, antes de intentar cruzar en una intersección. Este deber no ha disiminuido con la introducción de señales y oficiales de tránsito, para facilitar el tránsito y hacer el cruzar menos peligroso. El conductor tiene la ayuda del instrumento mécanico o del oficial, pero no puede ser relevado de observar el debido cuidado, descansando enteramente en ellos. Sigue obligado al mismo grado de cuidado que tenía antes de la introducción de estos medios modernos de ayuda al tránsito. Debe observarlo bajo cualesquiera circunstancias antes de dejar de ejercer el debido cuidado de su parte. La señal para cruzar no es una orden de continuar la marcha pero sí un permiso cualificado y esta cualificación consiste en continuar conforme a las disposiciones de ley y con cuidado, como un hombre prudente lo haría bajo tales circunstancias, que ciertamente requiere el mirar hacia la derecha e izquierda antes de entrar en la intersección. Sostener otra cosa, como alegan los demandados, sería relevar a los conductores de la vigilancia y el cuidado al entrar en intersecciones, y una licencia para que conduzcan despreocupadamente donde el tránsito es tan peligroso. Esto aumentaría grandemente el riesgo de cruzar las calles tanto para peatones como automovilistas. Por esta razón es que nosotros enfatizamos en el hecho de que, respecto al grado de cuidado requerido de los automovilistas u otros conductores en las intersecciones de las calles, no ha habido cambio alguno en las normas de negligencia con la introducción de señales y oficiales de tránsito."

■ Lo expuesto establece que el único responsable del accidente fue Donatiu. No puede responsabilizarse al Estado Libre Asociado porque un policía ordenara a la señora Prado que continuara la marcha. Así se expresó la Corte en *Coffey* v. *Slingerland,* 50 P.2d 830 (Cal. 1935):

". . . La afirmación llana e incualificada de que al recibir una dirección o una señal de un oficial de tránsito autorizado por una ordenanza a dar tales direcciones de tránsito, el conductor tiene por consiguiente un derecho absoluto para cruzar una intersección, irrespectivamente del movimiento del tránsito, no es una afirmación válida del derecho aplicado. Este derecho de continuar por la dirección del oficial de tránsito es uno que está siempre condicionado por el ejercicio continuo del debido cuidado por la persona obedeciendo tal dirección, de forma que los derechos de otras personas en la misma intersección puedan ser protegidos propiamente. Tal dirección del oficial de tránsito no tiene que ser cumplida si ello puede originar un accidente. Bajo todas las circunstancias, el debido cuidado debe ser ejercido y tal ejercicio del debido cuidado es superior al deber de obedecer la señal del oficial de tránsito."

Aparte de que la señal del policía no era licencia incondicional para seguir adelante, la intervención de la señora Prado no fue factor decisivo en la ocurrencia del accidente. Si en alguna negligencia incurrió fue mínima.

Procede ahora determinar la cuantía de la indemnización. El tribunal de instancia concluyó que: "Como resultado del choque, María Damiani Franco sufrió las siguientes fracturas: fractura compuesta conminuta del tercio medio de la tibia y la fíbula izquierda; fractura conminuta compuesta del tercio distal de la tibia y la fíbula derecha; fractura del tercio distal del radius derecho; fractura del húmero izquierdo, fractura de las costillas segunda, tercera, cuarta, quinta, sexta, séptima y octava del lado izquierdo. Además de las fracturas reseñadas, sufrió una contusión cerebral y golpes y contusiones múltiples en el brazo derecho y en distintas partes del cuerpo. . . . Con motivo de las lesiones que

recibió en el accidente, María Damiani Franco perdió el conocimiento en el momento mismo del suceso y permaneció en estado total de inconciencia hasta aproximadamente un mes y medio después de la fecha del accidente. Al recobrar el conocimiento se encontró que estaba en el Hospital Municipal, con sus piernas enyesadas y todo el cuerpo grandemente adolorido. Estuvo recluida durante tres meses en el Hospital Municipal y luego fue llevada en ambulancia al Hospital Presbiteriano, donde la operó el Doctor Sabatelle. Permaneció recluida por espacio de un mes en el Hospital Presbiteriano y entonces pasó a su residencia, donde guardó cama durante largo tiempo. . . . Como consecuencia del accidente, María Damiani Franco ha quedado incapacitada físicamente, no puede caminar por sí sola, teniendo necesidad de ayudarse con un bastón, y no puede salir sola a la calle. . . . A la fecha del accidente, esta reclamante, que es viuda y tiene aproximadamente sesenta y siete años, vivía acompañada de una hija suya en la Calle Las Flores 204, y atendía el negocio de una agencia de lotería que se le había concedido, para lo cual tenía que salir con frecuencia a la calle. Después del accidente, ha quedado incapacitada para trabajar. Por concepto de medicinas y honorarios de médicos la reclamante ha tenido desembolsos por la cantidad total de $618.21."

Teniendo en cuenta la edad de la demandante, estimamos que una compensación de $30,000 es razonable.

*Por lo anteriormente expuesto procede (1) revocar la sentencia dictada por el Tribunal Superior, Sala de San Juan, en el caso civil número 62-6202 y dictar otra declarando sin lugar la demanda de tercero;*(²) *(2) revocar la sentencia dictada en el caso civil número 62-5587 que responsabilizó al Estado Libre Asociado y dictar otra declarando con lugar la demanda condenando a los demandados Elías Donatiu,*

---

(²) En este caso los demandantes no solicitaron la revisión.

*Jack Feldstein, Inc., y Fireman's Insurance Company a pagar a la demandante la suma de $30,000 y $2,000 de honorarios de abogado.*