WILLIAM SALVÁ MATOS y GLORIA ESTHER RODRÍGUEZ, ETC., demandantes y recurrentes, *v.* ARTURO DÍAZ CONSTRUCTION CORP. ET AL., demandados y recurridos.

Número: R-65-64 Resuelto: 5 de abril de 1968

A. *Mieres Calimano,* abogado de los recurrentes; *Vicente Santori Coll,* abogado de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Los esposos y su hijo menor de edad demandantes y aquí recurrentes, tenían constituido su hogar en el número 1014 de la Calle 10 de la Urbanización Villa Nevárez. Hacía 8 ó 9 años que allí vivían en casa de su propiedad. El patio de

la vivienda colinda por su parte de atrás con la Quebrada Margarita que discurre por la urbanización. En igual forma otros patios de otras viviendas colindaban con dicha quebrada.

El padre William Salvá Matos quien declaró que practicaba la ingeniería civil, construyó una verja de columnas de hormigón y bloques de seis pulgadas en la colindancia trasera de su patio, de unos 5 pies de alto, en protección contra la referida quebrada que tenía su cauce a un nivel más bajo, unos ocho pies. Allí había una hondonada. El predio perteneciente al municipio que constituía el paso de la quebrada tenía de 35 a 40 pies de ancho.

En el año 1963 la empresa recurrida realizó obras para alterar el cauce de dicha quebrada. Cavó tan cerca del solar de los recurrentes con su equipo mecánico que destruyó la verja mencionada que ofrecía protección, la cual se fue al fondo. Después de 3 ó 4 días de desplomarse la verja, en 7 de julio de 1963, el menor recurrente de 10 años de edad caminaba en el patio de su casa por el borde de la colindancia, resbaló sobre una piedra y cayó al fondo de la quebrada a unos 10 pies más abajo. El niño recibió lesiones físicas a las cuales nos referiremos más adelante. Hay prueba en el récord de que el padre le llamó la atención a un supervisor de la obra dos días antes de ocurrir el accidente hacia el hecho de que habían destruido la verja. Hay prueba en el récord de que el padre advirtió al menor, después de caída la verja, que no se acercara allí.

Este recurso lo promueve la sentencia que declaró sin lugar la demanda interpuesta por los padres del menor y por el menor contra la recurrida en reclamación de daños por las lesiones y dolores físicos sufridos por el menor como consecuencia de dicho accidente, y por las angustias y torturas mentales sufridas por los padres, y en resarcimiento de gastos.

La Sala sentenciadora halló probados los siguientes hechos:

(2) "El patio de la residencia de dicho menor demandante colindaba con la Quebrada Margarita y la codemandada, Arturo Díaz Construction Corporation, efectuaba la obra de canalización de dicha Quebrada. El 4 de julio de 1963 dicha codemandada, en el proceso de realizar la obra antes referida, que indiscutiblemente era de gran utilidad para el bienestar general de aquella comunidad, excavó hasta la colindancia del patio donde residía dicho menor demandante, causando que se cayera una verja que allí radicaba y formando un barranco de aproximadamente diez pies de altura.

(3) El 7 de julio de 1963 el menor demandante, Cándido Alberto Salvá Rodríguez, mientras se hallaba sólo en el patio de su casa, comenzó a caminar por el borde del barranco y al pisar una piedra que se hallaba localizada en dicho borde, resbaló y cayó por el barranco hacia abajo sufriendo varias lesiones corporales. Al momento de ocurrir este accidente dicho menor demandante conocía, desde hacía una semana, la naturaleza de las obras de canalización que realizaba la codemandada, Arturo Díaz Construction Corporation, en ese sector y de los barrancos que se habían formado en otros lugares a lo largo del borde de la Quebrada por el movimiento de tierra hecho por los tractores localizados dentro de la Quebrada y cuyos barrancos eran similares a aquél que existía en el patio de su residencia. El padre del menor demandante le había aconsejado tres días antes del accidente que no se acercara por el barranco del patio de su casa porque podía sucederle algo.

(4) El menor demandante, Cándido Alberto Salvá, tenía a la fecha del accidente pleno conocimiento de la situación que existía en los terrenos del patio de su residencia y estaba dotado de una inteligencia y experiencia que lo capacitaban para apreciar dicha situación y el peligro que constituía actuar en la forma que lo hizo. A la luz de esa capacidad, discreción, conocimiento y experiencia, dicho menor demandante actuó negligentemente y fue esa negligencia la causa única del accidente."

Concluyó además la Sala sentenciadora, que el menor demandante tenía 10 años 10 meses de edad al ocurrir el accidente, que estaba próximo a cursar su sexto grado en el colegio La Merced y mantenía un promedio en sus notas escolares que fluctuaba entre B y B+. Que jugaba pelota, baloncesto y

corría bicicleta, lo cual hacía en un parque de recreo de la urbanización donde vivía.

Concluyó la Sala como cuestión de derecho que de imponerse responsabilidad a la codemandada aquí recurrida por los daños sufridos por el menor, la misma debería basarse en que dichos daños eran razonablemente previsibles y que las consecuencias de un acto negligente que deben preverse son las que están dentro de las probabilidades y no dentro de las posibilidades, y que sólo se responde de las consecuencias probables o "las que pueden anticiparse o preverse" mas no aquellas que son meramente posibles. Concluyó la Sala sentenciadora, después de expresarse sobre la capacidad que tiene un niño para apreciar el peligro, que por la inteligencia, conocimiento y experiencia del niño demandante, éste debió comprender la situación que existía al ocurrir el accidente y podía apreciar plenamente el riesgo que "conllevaba" el caminar por el borde del barranco que se había formado en la colindancia del patio de su casa.

 Como cuestión de derecho, nos parece que la sentencia recurrida exige mucho de la prudencia y función de previsión del niño, y poco de la prudencia y función de previsión de la empresa demandada. Nuestro derecho positivo declara que nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables. Código Civil (1930) Art. 1058. Y véase el Art. 1043. En su sentido usual y corriente "prever" es ver con anticipación, conjeturar lo que ha de suceder.[1] Es precaver, prevenir o evitar un daño o peligro. Previsibilidad, según Cabanellas, es elemento característico de la culpa, consistente en la posibilidad de prever los resultados dañosos de la acción no previstos de modo efectivo en el caso de que se trate.[2] Requiere el precaver, adoptar las medidas de seguridad para

---

[1] Julio Casares, *Diccionario Ideológico de la Lengua Española* (1959).

[2] Guillermo Cabanellas, *Diccionario de Derecho Usual.*

evitar en lo posible los males reales. En sentido usual, y corriente previsión, el acto de prever, es la acción de disponer lo conveniente para atender a contingencias o necesidades previsibles, o sea, atender aquello susceptible de ser previsto.

La empresa debió haber previsto el hecho, claramente previsible, que eliminada por ella la pared que protegía contra la caída al barranco, era posible y probable que un niño pudiera caerse por allí, máxime cuando al destruirse la protección, la hondonada surgía más peligrosa en súbita caída, debido a las obras de excavación y corte. Posible, porque eliminada la protección, el caerse por allí podía suceder, y no era un hecho contra el orden natural de las cosas, que es lo imposible, sino más bien en el orden natural de las cosas, que es lo posible. Era probable que ocurriera porque la quebrada discurría por una urbanización típica de viviendas contiguas, por entre los patios de las residencias en que vivían niños. Teniendo lo probable por norma la ley de la experiencia, del raciocinio y de la vida, según apunta Barcia, [3] la experiencia y el raciocinio debieron anticiparle a la demandada que era un hecho factible el que ocurriera el suceso, ante el sentido natural de curiosidad de los niños y la natural limitación de la capacidad de un niño para conjeturar o prevenir de una vez contra todo lo que puede sucederle.

■ La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. Así reza el Art. 1057 del Código Civil.

En las circunstancias de este caso, la demandada incurrió en la omisión de aquella diligencia que dichas circunstancias exigían, al no poner una valla o protección provisional en sustitución de la que había destruido, o tomar otras precauciones. En la esfera cuasidelictual, ésta era una diligen-

---

(3) Roque Barcia, *Gran Diccionario de Sinónimos Castellanos* (1950).

cia de la demandada que normalmente le era debida en el ambiente de la convivencia humana. Sentencia del Tribunal Supremo de España de 20 de octubre de 1950.

■ En el grado en que se es diligente, no prospera la negligencia, y se evita el daño, apuntamos en *Pereira* v. *E.L.A.*, 91 D.P.R. 750. Como en ése, en el de autos se careció de sentido de previsión. Véanse: *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961); *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518 (1962); *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20 (1964); *Hernández* v. *Fournier*, 80 D.P.R. 93 (1957); *Weber* v. *Mejías*, 85 D.P.R. 76 (1962); *Ramos* v. *Sucn. Serrallés*, 51 D.P.R. 343 (1937).

En este caso de *Ramos*, un estudio exaustivo del Juez Córdova Dávila, dijimos, (pág. 355): "Si el dueño de la propiedad tiene motivos fundados para anticipar la presencia de niños al establecer una condición peligrosa, su deber es adoptar precauciones adecuadas y razonables para evitar daños y salvar su responsabilidad. No importa que el niño sea un intruso. No es necesario, por lo tanto, que haya sido inducido por el peligro a penetrar en la propiedad. *Basta con que haya podido anticiparse razonablemente su presencia.*" Aceptamos expresamente de la doctrin. norma de "que si hubo razón para anticipar la presencia de niños, no tiene importancia la forma y manera en que el niño lesionado vino a la propiedad."

En el caso ante nos el niño estaba en el patio de su propiedad, donde acostumbraba estar. Tenía derecho a usar ese patio. No obstante su corta edad, el récord demuestra que no realizaba actos imprudentes. No corría, ni saltaba en el borde. Resbaló al pisar una piedra, pequeña según el récord. A no ser por la falta de diligencia y precaución de la demandada al no sustituir la protección o tomar alguna otra medida de seguridad, al resbalar el niño no hubiera caído abajo.

Del escolio 1ro. de nuestra decisión de *Márquez* v. *Puerto Rico Telephone*, 88 D.P.R. 429 (1963), citamos:

"(1) Como dice Castán, *Derecho Civil Español, Común y Foral,* Tomo 3, 8a. ed. 1954, pág. 146: 'La esencia de la culpa está en la falta de diligencia y previsión que supone en el autor del acto.'

Barassi, citado por Santa María, *Comentarios al Código Civil* (1956), Tomo 2, pág. 947, habla del deber general de corrección y de prudencia que impone la necesidad de una convivencia social ordenada en relación con los demás ciudadanos, y declara el acto ilícito en el sentido extracontractual cuando viola los deberes generales de corrección social o de conducta correcta, deberes que no están escritos en los códigos pero que representan el presupuesto mínimo sobreentendido del orden de la vida social, conceptos éstos que también citamos en *Ramos* v. *Carlo,* ante."

■ Situada ya la falta de previsión de la empresa que dio lugar al daño, y su omisión de la diligencia que en las circunstancias del lugar debió ejercer, la recurrida responde, aun cuando se hubiera probado actos imprudentes del niño. Como dijimos en *Ramos* v. *Carlo,* 85 D.P.R. 353 (1962), el Art. 1042 del Código Civil impone obligación por los actos y omisiones ilícitos en que intervenga *cualquier género* de culpa o negligencia. "El que comete el acto u omisión culposo o negligente", dijimos en este caso, (pág. 365), "debe siempre responder en la *medida* que sea, pero no ha de quedar exonerado del todo." Expusimos, citando a Castán: "El autor del acto ilícito responde siempre del daño, ya lo haya producido dolosamente o por simple negligencia y cualquiera que sea su grado, pues se tiene en cuenta hasta la más ligera falta en atención a que esta clase de culpa afecta más bien que al interés privado, a relaciones de *interés social.* De aquí la regla Romana: '*In lege aquilia et levissima culpa venit.*' "

Conforme a los anteriores pronunciamientos, la sentencia recurrida que exoneró de toda responsabilidad a la demandada no debe prevalecer.

Según la prueba en el récord, el menor cayó sobre la piedra dura en el fondo de la quebrada. Estipularon las par-

tes que la prueba médica demostraría que hubo una fractura conminuta del extremo distal del radio izquierdo, reducido a inmovilidad con yeso por un período de cinco semanas. Para ello fue necesario operar al niño con anestesia general. No era de esperarse que se produjeran cambios funcionales o anatómicos permanentes o secundarios a la fractura. En adición a la fractura del brazo el niño sufrió hemorragia intensa en la región de los dientes anteriores y la pérdida de los molares y caninos deciduos superiores izquierdos. Los centrales y lateral izquierdo superiores permanentes estaban bastante flojos. La corona del central superior derecho tenía la esquina izquierda fracturada. La encía estaba separada de los dientes y bastantes lacerada. Hubo que fijar la encía y los dientes con suturas por dos semanas. A la fecha del examen, 2 de agosto de 1963, era prematuro hacer un diagnóstico final. Era necesario seguir la observación radiográfica por uno o dos años para asegurar el completo restablecimiento de los dientes afectados por el golpe.

Hay prueba de la parte demandada al efecto de que el 4 de agosto de 1964 la boca del niño fue examinada sin que hubiera lesión permanente excepto una fractura en ángulo del incisivo central derecho. Los dientes estaban firmes y en su sitio. El récord demuestra que el padre incurrió en gastos de hospitalización y tratamiento en la suma de $254.00.

A la luz de esta prueba se dictará otra sentencia fijando una indemnización para el menor demandante de $6,000 por sus lesiones y dolores físicos; $1,000 a sus padres por angustias mentales; $254 en resarcimiento de gastos y $500 de honorarios de abogado ante el tribunal de instancia, cantidades éstas que la recurrida deberá satisfacer.