JULIO CÉSAR RIVERA TOSADO, demandante y recurrido, *v.* MARYLAND CASUALTY CO. y DR. HÉCTOR A. MARTÍNEZ VILLAFAÑE, demandados y recurrentes.

Número: R-66-262      Resuelto: 19 de diciembre de 1968

*Martínez-Muñoz, Agraít-Oliveras · & Otero,* abogados de los recurrentes; *Federico Valladares,* abogado del recurrido.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

La Sala de San Juan del Tribunal Superior dictó sentencia de daños y perjuicios contra los recurrentes Dr. Héctor A. Martínez Villafañe y su aseguradora Maryland Casualty Co. La sentencia descansa en los siguientes hechos que la Sala determinó que fueron probados:

"1.—En 13 de agosto de 1965 el demandante, Julio César Rivera Tosado, en gestiones de su trabajo visitó la residencia del Dr. Héctor Martínez Villafañe, asegurado de la demandada. La Sra. Martínez Villafañe le invitó a entrar a la sala mientras ella preparaba un documento que habría de entregarle. El Sr. Rivera Tosado comentó sobre lo bonita que estaba la terraza, sitio que él conocía pues antes había hecho reparaciones al techo de la misma, y la señora le dijo que podía ir a verla. Cuando el demandante se dirigió hacia la terraza se estrelló contra la puerta de cristal que la separaba de la sala. La puerta se rompió y los vidrios prácticamente le cercenaron la punta de la nariz al Sr. Rivera Tosado.

El accidente y sus consecuencias se debieron a la negligencia concurrente, en partes iguales, del Sr. Rivera Tosado, quien conociendo la existencia de la división de cristal no fue cuidadoso al intentar pasar de la sala a la terraza, y de los asegurados de la demandada, quien no advirtieron al demandante de la presencia de la puerta ni tenían en la misma nada que hiciera visibles los cristales.

2—En el Hospital Presbiteriano el Dr. Alberto Sánchez le hizo al demandante una sutura quirúrgica, sin poder utilizar anestesia, para pegar a la nariz la porción que había resultado cortada. El Dr. Iván Márquez continuó el tratamiento y siguiendo sus instrucciones el demandante estuvo recluído en casa durante 56 días pues no podía exponer la herida al sol ni al polvo. Asimismo, le recomendó que no trabajara en nada que pudiera contaminar la herida, lo que le impidió realizar su trabajo habitual en la conservación, reparación y modificación de edificios.

3—El día de la vista el Sr. Rivera Tosado, de 56 años de edad, mostraba una cicatriz mutilante en la nariz, que producía la cómica impresión de una nariz con un sombrerito. Se estiman los daños y perjuicios sufridos por el demandante en SEIS MIL DÓLARES ($6,000.00)."

En derecho, aplicó la Sala sentenciadora el Art. 1802 del Código Civil así como su disposición sobre imprudencia concurrente habiendo fijado los daños en $6,000, y dictó sentencia contra los demandados por el monto de $3,000, y $300 de honorarios de abogado.

En lo que respecta a la imputación de imprudencia concurrente, el demandante-recurrido no ha solicitado la revisión del fallo. La han solicitado los demandados-recurrentes y los errores que señalan van dirigidos a la prueba. Expedido el auto, los recurrentes no han elevado ante nos la transcripción de la evidencia, por lo que no estamos en condiciones de enjuiciar las conclusiones de hecho del tribunal. [1]

[1] Contestando un interrogatorio sometido por los recurrentes, el demandante-recurrido declaró bajo juramento que había visitado la residencia del Dr. Martínez Villafañe con anterioridad a la ocurrencia del accidente en una ocasión; que en una sola ocasión había pasado por el

Dispone el Art. 1802 del Código Civil que el que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño; y el 1058 dispone que fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no *hubieran podido preverse*, o que previstos, fueran *inevitables*.

Las obligaciones, entre otras fuentes, nacen de la *ley*, y de los actos y omisiones ilícitos o que *intervenga cualquier género* de culpa o negligencia—Art. 1042. Y dispone el 1057 que la culpa o negligencia del deudor consiste en la *omisión* de aquella *diligencia* que exija la naturaleza de la obligación, y corresponda a las circunstancias de las personas, *del tiempo* y del lugar.

Ese cuadro de artículos de nuestro ordenamiento civil consagra dos hechos: (1) el deber del individuo en su vida de relación social de no causarle daño a otro; y (2) el deber de compensarle si se lo causare. Estaría exento de este segundo deber—excepto en los casos en que rija por ley un criterio de responsabilidad objetiva—sólo si el suceso dañoso no podía preverse, o de haberse previsto, resultara ser inevitable.

Si la culpa o negligencia en que descansa la responsabilidad del Art. 1802 consiste, según el 1057, en dejar de ser diligente acorde a determinadas circunstancias, y conforme al Art. 1058 se responde de todo suceso que pudo preverse, el Art. 1802 gira inevitablemente en torno a la función de previsión del individuo, como factor determinante de su responsabilidad con su congénere. (²)

---

sitio donde estaba la puerta de cristal abierta, el hueco estaba allí y no tropezó; y que ese día había ido a la residencia del Dr. Martínez Villafañe a cobrar una cuenta. Con anterioridad al accidente el demandante había corregido varias filtraciones en el techo de la marquesina del Dr. Villafañe.

(²) El deber de prever, dentro de la figura jurídica de la responsabilidad cuasi-delictiva del Art. 1802, es exigido por nuestra doctrina.

Esta función que demanda el deber social de prever el daño a otro es inmutable. No cambia. Sí hay mudanza, con el correr de los tiempos, en lo que respecta a las cosas y riesgos a preverse. Así, con plena conciencia de las mutaciones sociales, el Art. 1057 proyecta *ad infinitum* el deber de no causar daño, en las variantes circunstancias de cada época.

■ Las divisiones o paredes enterizas de cristal, ya sean fijas o ya como puertas movibles, han adquirido uso frecuente en las modernas construcciones. No son inherentemente artefactos de peligrosidad, *Santaella Negrón* v. *Licari*, supra, pero pueden producir resultados como los de este caso en una persona no prevenida ni advertida, o con vista defectuosa, ante la confusión del vacío y el cuerpo material transparente. Con más razón si, como en el caso de autos, no se trata de una pared o división final, sino de una división transparente que conduce a otra parte de la estructura a la cual hay acceso.

En ausencia de otras precauciones, la prevención y el cuidado a ejercitarse para no causar daño son sencillos. Basta con adherir un adorno o cualquier otro material o diseño a la pared de modo que se sepa que allí hay un cuerpo, y no el vacío.

Ha podido haber negligencia además, aunque no lo estamos resolviendo en las condiciones del récord ante nos, en el hecho del material usado. Nada indica que el demandante-recurrido se acercara a la pared en forma no usual, o con ímpetu exagerado. En esas circunstancias, aun cuando su cara viniera en contacto con la puerta de cristal, éste no

*Weber* v. *Mejías*, 85 D.P.R. 76 (1962); *Cruz Costales* v. *E.L.A.*, 89 D.P.R. 105 (1963); *Rodríguez Ramírez* v. *Franqui Viera*, 86 D.P.R. 766 (1962); *Ramos* v. *Carlo*, 85 D.P.R. 353 (1962); *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518 (1962); *Colón Calixto* v. *Mendoza*, 83 D.P.R. 303 (1961); *Baralt* v. *E.L.A.*, 83 D.P.R. 277 (1961); *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961); *Pereira* v. *E.L.A.*, 91 D.P.R. 750 (1965); *Salvá Matos* v. *Díaz Const. Corp.*, 95 D.P.R. 902 (1968).

ha debido romperse y herirlo. Ello indica que pudo haber descuido o falta de previsión en la selección del cristal adecuado para ese tipo de pared.

*Se confirmará la sentencia que compensó al demandante-recurrido.*