ARTURO RUIZ GUARDIOLA ET AL., demandantes y recurrentes, *v.* SEARS ROEBUCK DE PUERTO RICO, INC., ET AL., demandados y recurridos; ARTURO RUIZ GUARDIOLA ET AL., demandantes y recurridos, *v.* SEARS ROEBUCK DE PUERTO RICO, INC. y LUIS MORALES, demandados y recurrentes.

*Números:* R-70-225,      *Resueltos:* 25 de septiembre de 1972
                 R-70-226

818

*Beverley, Rodríguez, Estrella & Pesquera,* abogados de los demandados y recurrentes; *Agrait, Oliveras & Otero,* abogados de los demandantes y recurrentes.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

Los esposos demandantes[1] Arturo Ruiz Guardiola y Emma Luz Guardiola, instaron acción ante la Sala de San

---

[1] Recurrentes en este caso.

Juan del Tribunal Superior contra los demandados[2] Sears Roebuck de Puerto Rico, Inc. y contra el empleado de ésta, Luis Morales, reclamándoles el pago de los daños que alegadamente sufrieron con motivo de un accidente de autómóviles ocurrido en la intersección de la carretera número 1 de Caguas a Río Piedras y la carretera número 176 del Barrio Cupey de San Juan, el 28 de agosto de 1965.

El tribunal de instancia declaró con lugar la reclamación de los esposos demandantes, al concluir que el accidente se debió a la exclusiva culpa y negligencia del chofer codemandado Luis Morales, cuya negligencia era imputable a la otra codemandada Sears Roebuck de Puerto Rico, Inc., quien era patrono de dicho chofer y dueña del vehículo que aquél conducía, al lanzarse al cruce de una carretera de mayor tránsito sin tomar las precauciones debidas, especialmente al no tener ninguna visibilidad hacia el lado izquierdo; y en vista de que llovía en esos momentos y de que el tránsito era pesado. En su consecuencia el tribunal sentenciador condenó a la parte demandada a satisfacer a los esposos demandantes las siguientes cantidades en concepto de daños: gastos médicos y medicinas, $2,038.07; pérdida de ingresos de la demandante Emma Guardiola de Ruiz durante los 4 años 1 mes transcurridos desde la fecha en que dejó de trabajar hasta la fecha en que se dictó la sentencia, $19,600; sufrimientos, dolores y angustias de la demandante Emma Guardiola de Ruiz y su incapacidad física de un 50%, $25,000; sufrimientos y angustias mentales del demandante Arturo Ruiz Guardiola, $4,500 y $4,083 por la pérdida de ingresos de éste. La reclamación de los hijos de los esposos Ruiz-Guardiola fue desestimada por haber prescrito sus causas de acción.[3]

---

[2] Recurrentes y recurridos en este caso.

[3] No se ha levantado como error la determinación de prescripción en cuanto a los hijos de los demandantes.

Contra dicha sentencia han solicitado revisión ambas partes.

Los demandantes señalan como único error el que el tribunal sentenciador no concediera compensación alguna a la demandante, señora Ruiz, por disminución de su capacidad productiva en vista de la incapacidad resultante del 50% de sus funciones fisiológicas generales, a pesar de haberle concedido compensación por la pérdida de ingresos hasta la fecha en que se dictó sentencia.

Los demandados, por su parte, señalan diez errores cometidos por el tribunal sentenciador. Tres de ellos se refieren a la determinación de negligencia, cuatro de ellos a las partidas de compensación concedidas, otro que envuelve el haber ignorado una condición previa y pre-existente de la esposa demandante (que en esencia va dirigida a la determinación de compensación), otro en cuanto a la apreciación del impacto entre los dos vehículos el cual no consideran que fuera suficientemente fuerte para causar el daño físico sufrido por la demandante y, el último, motivado por haber declarado el tribunal sin lugar una moción de reconsideración solicitada por la parte demandada.

Estamos conformes con la conclusión del tribunal sentenciador en el sentido de que el accidente se debió a la exclusiva culpa y negligencia del chofer codemandado actuando en funciones de su empleo con la codemandada Sears Roebuck de Puerto Rico, Inc.

■ Ya hemos resuelto anteriormente que la señal para cruzar, ya sea mediante instrumento mecánico o de un oficial policíaco, no es una orden de continuar la marcha y sí un permiso cualificado para continuar conforme a las disposiciones de ley, como un hombre prudente lo haría en tales circunstancias, lo que ciertamente requiere el mirar hacia ambos lados antes de entrar en la intersección. *Damiani* v. *Donatiu*, 95 D.P.R. 829 (1968); *Pereira* v. *E.L.A.*, 91 D.P.R. 750 (1965); *Briales Aldrich* v. *Torres*, 89 D.P.R. 815 (1964).

No se cometieron los errores señalados por los demandados en relación con la determinación de negligencia ni la de apreciación del impacto entre los vehículos.

Pasemos a discutir la impugnación que hacen los demandados de la cuantía de daños concedida a los demandantes.

Apuntan los demandados primeramente que los daños concedidos a la señora Ruiz Guardiola por concepto de pérdida de ingresos resultan especulativos, injustos y conflictivos con la prueba desfilada. Debe aclararse que el tribunal no concedió a la demandante daños por pérdida de ingresos durante los seis meses siguientes a la ocurrencia del accidente por razón de que ésta aceptó haber continuado trabajando durante tal período de tiempo. Pero sí concedió daños basados en los 4 años 1 mes subsiguientes transcurridos hasta el día del juicio.

Examinadas las circunstancias específicas de este caso entendemos que el tribunal de instancia, al fijar la compensación por dicha pérdida de ingresos de la señora Ruiz Guardiola, debió haber tomado en consideración la naturaleza del trabajo que ésta llevaba a cabo en vista de su condición física durante dicho período de tiempo que culminó con la fecha del juicio. Veamos:

Surge del récord que su trabajo era de tarea parcial como farmacéutica al que dedicaba *uno o no más de cuatro días al mes.* (T.E. pág. 20). (Énfasis suplido.)

En su testimonio en la deposición tomada el 26 de septiembre de 1968 la demandante describe su trabajo en la fábrica en la forma siguiente:

"Este señor [el dueño], tiene una fábrica y me pide que yo le dé el nombre . . . y *es un 'part time' muy cómodo* porque yo podía hacer todos mis quehaceres e ir una o dos veces, uno o dos días al mes." (Pág. 26.) (Énfasis suplido.)

". . . tan pronto ese 'stock' bajaba [el dueño] me daba un timbrazo *'A tu mayor comodidad'.*" (Pág. 27.) (Énfasis suplido.)

822

". . . el 'duty' mío era *solamente supervisar* mientras fabricaban." (Pág. 28.) (Énfasis suplido.)

"La actividad mía consistía en coger la goma tragacanto, o sea, los agentes emulsionantes y pesarlos . . . se le echa la goma tragacanto, se le da a un botón y las aspas batidoras eléctricas empiezan a batir ese producto. Después que ya está incorporado el producto, como quince o veinte minutos, se la echa la tintura de ipecacuana que es lo único que lleva . . . Esa era mi función y *yo me sentaba a esperar tres horas* para poder fabricar. Si quería pasar a la casa de [los dueños], me iba allá y me tomaba mi tacita de café con doña Mary [esposa del dueño], le servía de compañía . . . ." (Págs. 32, 33.) (Énfasis suplido.)

Luego, en su testimonio durante el juicio, la demandante expresó lo siguiente:

". . . la función mía se circunscribía a medir con una medida cincuenta c.c. de extracto fluido de ipecacuana, que es la droga que hay que medir, y dar unas pesadas; que no lo hacía yo sino que yo *supervisaba lo que [dos obreros] pesaran.*" (T.E. pág. 26.) (Énfasis suplido.)

.    .    .    .    .    .    .    .    .    .

". . . Esa fábrica está establecida en tal forma que *todo se manipula mediante llaves*. . . . Y eso no lo hacía yo sino que lo hacían dos obreros. . . ." (T.E. pág. 26.) (Énfasis suplido.)

La demandante señora Ruiz Guardiola ni siquiera tenía que conducir automóvil para llegar a su trabajo ya que ésta no sabía guiar, y dependía de que su esposo la llevara a la fábrica. Tal hecho surge de su propio testimonio en la deposición antes referida a la pág. 31:

"No yo no guiaba, mi esposo es vendedor y yo, como este es un trabajo que yo lo podía hacer con toda comodidad, pues yo aprovechaba cuando él tenía la ruta de Vega Alta que tenía que pasar por allí y me dejaba por la mañana y me recogía a las ocho o nueve de la noche."

Y en cuanto a sus limitaciones para sus actividades, ésta las resumió en su testimonio en el tribunal en la forma siguiente:

"Me está proscrito todo trabajo que implique doblarme o hacer fuerza. . . ." (T.E. pág. 14.)

También relató las cosas que puede hacer:

". . . hacer el almuerzo, hacer el desayuno y hacer la comida, y echar ropa a la máquina de lavar y a la secadora." (T.E. págs. 14, 15.)

". . . puedo ir a misa. Cuando me estoy sintiendo bien voy. . . . Esa hora la saco todos los domingos de las que puedo estar. El domingo yo voy a la iglesia." (T.E. pág. 18.)

". . . No puedo ir a bailes porque yo no voy a estar horas prolongadas. Aun en una reunión que yo tenga que levantarme y vestirme, ir un 'beauty parlor' *en ese tiempo ya se me van las cuatro horas;* para entonces montarme en un carro, llegar a la reunión, decir, 'hola, ¿qué hay?' y me voy. Las pocas salidas que doy tienen que ser a casa de familia donde yo pueda ir y acostarme allí a distraer mi mente un rato." (T.E. pág. 18.) (Énfasis suplido.)

"P. ¿Qué son las cuatro horas a que usted hace referencia?

"R. Es el período máximo que mi cuerpo ha tolerado con la autodisciplina que me ha ido a través del tiempo indicando mi condición según yo trato de hacer una cosa." (T.E. pág. 19.)

■ Un análisis del testimonio de la propia demandante demuestra que su estado físico era tal que no le impedía del todo llevar a cabo la función cómoda y limitada de farmacéutica de tarea parcial en la fábrica donde trabajaba. Su impedimento físico para realizar la labor según ella la describe no nos parece que estuvo respaldada por la preponderancia de la evidencia. Ni siquiera tenía que guiar automóvil. Su amistad con el patrono y la esposa de éste era tal que durante los descansos de tres horas que tomaba en su trabajo pasaba a la casa contigua del patrono a disfrutar de la compañía de la esposa de aquél y de una taza de café. No tenemos duda de que la demandante podía realizar la tarea ocasional de supervisión en dicha fábrica, especialmente cuando de su propio testimonio surge que en las ocasiones en que el patrono amigo la necesitaba le daba un timbrazo para que viniera a su "mayor comodidad". Quedó demostrado que sus funciones

824

no requerían estar de pie por mucho tiempo y que tampoco se requería hacer fuerza o doblarse. La demandante devengaba un salario de $400.00 mensuales por su trabajo de farmacéutica de tarea parcial que efectuaba una o dos veces al mes según su propia declaración. No hay evidencia alguna de que la demandante acostumbrara a trabajar en su profesión o trabajo otro alguno, excepto la prueba desfilada en cuanto al trabajo de tarea parcial que efectuaba en la fábrica de sus amigos de Emulsión Jiménez. Nos da la sensación de que ella llevaba a cabo esa labor en particular por la comodidad que representaba. Ante tales circunstancias, entendemos que cometió error el tribunal sentenciador al concederle compensación por pérdida de ingresos en la suma de $19,600, la cual debe dejarse sin efecto.

En cuanto a la incapacidad parcial permanente de la demandante, (⁴) el perito médico Dr. Alvarez de Choudens concluyó que como resultado del accidente la demandante sufre de una enfermedad discogénica y cervical y lumbar que dificulta que el cuadro que presenta desparezca ya que a pesar de cuatro años de tratamiento conservador no ha desaparecido la enfermedad. Considera el referido perito que la

---

(⁴) La estimación de daños depende de las circunstancias concurrentes. Así no puede adoptarse como regla fija y antecedente obligatorio lo resuelto en casos específicos. *Vda. de Silva* v. *Auxilio Mutuo*, 100 D.P.R. 30 (1971) (Ref. Colegio de Abogados núm. 63); *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956); *Baralt* v. *Báez*, 78 D.P.R. 123 (1955); *Sánchez* v. *Sucn. J. Serrallés*, 53 D.P.R. 80 (1938). La estimación de los daños, especialmente por sufrimientos físicos y angustias mentales, es una función que descansa en la sana discreción del juzgador, *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961), y conlleva el ánimo de reparar al perjudicado y sin el propósito de castigar a su causante. *Toro Mercado* v. *P.R. & Amer. Ins. Co.*, 87 D.P.R. 658 (1963); *Rivera* v. *Rossi*, 64 D.P.R. 718 (1945).

Más aún, ha sido doctrina reiterada de este Tribunal que en ejercicio de sus facultades revisoras, tiene amplia discreción para adoptar su propio criterio en la apreciación o evaluación de la prueba pericial y hasta descartarla aunque resulte técnicamente correcta. *Valdejulli Rodríguez* v. *A.A.A.*, 99 D.P.R. 917 (1971); *Prieto* v. *Maryland Casualty Co.*, 98 D.P.R. 594 (1970); *Concepción Guzmán* v. *A.F.F.*, 92 D.P.R. 488 (1965).

condición de la demandante le ha creado una incapacidad permanente de un 50% · de las funciones generales de su cuerpo. Esta tiene 45 años de edad. Desde el mes de septiembre de 1965 ha estado bajo tratamiento con el Dr. José Alvarez de Choudens quien diagnosticó un esguince de la región cervical y otro en la región lumbosacral. Ha estado padeciendo de dolores internos con períodos de alzas y bajas y ha tenido que reestructurar todo su sistema de vida. Las instrucciones del médico son: no doblarse, no levantar ni empujar objetos pesados, no caminar ni estar sentada por tiempo, descansar por períodos durante el día, preferiblemente acostada y aplicarse tracción al cuello diariamente, no usar almohadas y usar corset ortopédico.

■ Considerando la incapacidad de 50% de las funciones fisiológicas generales de la demandante, conforme la declaración del neurocirujano Dr. Alvarez de Choudens, la cual afecta su capacidad de trabajo, y considerando además los sufrimientos y angustias que ha experimentado y continúa sintiendo, llegamos a la conclusión de que cometió error el tribunal de instancia al conceder la suma de $25,000 por tales conceptos, y aumentamos dicha compensación a $40,000. Aunque la demandante había padecido antes y aún tiene una condición congénita de sacralización, no quedó demostrado que dicha condición preexistente fuera la causa de la incapacidad parcial permanente que ésta sufre. Y, a pesar de haber estado la demandante envuelta con posterioridad al accidente que motivó este pleito en un accidente automovilístico de poca importancia, tampoco pudo demostrarse que como consecuencia de ·dicho accidente se le agravara su condición física.

No vemos razón para alterar las otras sumas concedidas por el tribunal de instancia, las cuales se confirman.

Finalmente un estudio del error levantado por los demandados relacionado con la determinación del tribunal a quo al declarar sin lugar la moción de reconsideración nos revela que el mismo es inmeritorio.

*Se modificará la sentencia de acuerdo con los pronunciamientos de esta opinión y así modificada será confirmada.*

El Juez Asociado, Señor Martínez Muñoz, no intervino.