SANTOS RODRÍGUEZ ET AL., demandantes y recurridos, *v.* ALFREDO SÁEZ RODRÍGUEZ ET AL., demandados y recurrentes.

*Número:* R-67-232    *Resuelto:* 24 de marzo de 1972

*Agrait Oliveras & Otero,* abogados de los recurrentes; *Ángel Manuel Ciordia,* abogado de los recurridos.

PER CURIAM: El accidente que dio origen a este pleito ocurrió el último día del año 1959. El juicio se celebró en agosto de 1964. Se falló en junio de 1967. Es un caso sencillo en sus hechos.

Pasadas las seis y media de la tarde un automóvil público que se dirigía de la Central San Vicente al pueblo de Vega Baja tuvo un accidente con una guagua comercial propiedad de la Destilería Serrallés y que de Mayagüez se dirigía a San Juan. El conductor del vehículo público murió en el accidente. Otros pasajeros resultaron heridos, entre ellos un hijo del conductor. Radicaron demanda para resarcirse. El accidente ocurrió frente a la entrada que tiene Vega Baja por la calle Tulio Otero. La carretera donde ocurre el accidente consiste de un carril que discurre hacia Mayagüez y otro que discurre hacia San Juan. La versión de los hechos según la parte demandante, hace responsable a la demandada. El tribunal de instancia declaró con lugar la demanda. Al así hacerlo hizo suya en su totalidad la versión de los demandantes.

De acuerdo con los demandantes, y según dictaminó el juez sentenciador, el automóvil público, un Plymouth, discurría en dirección de San Juan a Arecibo e iba a doblar a su izquierda para entrar a Vega Baja por la calle Tulio Otero. En dirección contraria venía la guagua de la Destilería Serrallés. El conductor del automóvil Plymouth detuvo la marcha y paró su vehículo un poco inclinado hacia su izquierda, sin cruzar la línea blanca que divide los dos carriles de la carretera, para permitir que la guagua comercial pasara. Dio el cambio de luces. La guagua comercial era conducida "a velocidad exagerada y corría además por el medio de la carretera, o sea, sobre la línea blanca [que divide la carretera] invadiendo de este modo parte del carril que le correspondía al conductor

del automóvil Plymouth y donde éste había detenido su automóvil para permitir el paso de la guagua antes de él, el conductor del Plymouth cruzar hacia la calle Otero." "Cuando la guagua se acercaba el occiso exclamó '¡Ahí viene ese fantasma!',; instantes después de producirse la exclamación la guagua impactó violentamente el automóvil Plymouth." Concluye además el juez de instancia que la "guagua conducida por el codemandado Sáez embistió contra la parte frontal izquierda del automóvil Plymouth con tal fuerza que arrastró éste hacia el carril contrario, o sea, el carril de la izquierda, que es el que correspondía a la guagua comercial de Sáez, el codemandado, atravesándolo en dicho carril quedando la guagua incrustada en el frente del automóvil Plymouth y gran parte de su carrocería, incluyendo sus ruedas traseras, en el paseo de la carretera; es decir, el que conduce de Vega Baja hacia San Juan quedó bloqueado totalmente por ambos vehículos."

El juez funda sus determinaciones principalmente en la declaración del Teniente Pantojas, que investigó el accidente y declaró sobre lo que allí vio.

Sobre esto expresa el juez:

"El sargento de la policía Juan Pantojas García se persona al sitio del accidente a hacer la investigación de rigor. Eran aproximadamente las 6:45 P.M. En su inspección ocular encontró, y el Tribunal hace suya esta versión:

(a) partículas de vidrio pegadas en el centro de la carretera;

(b) un corte u hoyo en el pavimento o brea a seis pulgadas de la línea blanca en el carril donde estaba parado el carro del occiso de donde arranca una huella sobre el área de rodaje que venía a morir precisamente debajo de la rueda izquierda delantera en el sitio donde quedó finalmente el Plymouth después del impacto;

(c) el aro de dicha goma estaba un poco doblado en su pestaña y tenía fragmentos de bitumul pegados;

(d) había, además, fango y arena alrededor del área donde estaba el corte.

Todas estas circunstancias son demostrativas de que el automóvil Plymouth estaba en su carril detenida su marcha en espera de poder cruzar hacia la calle Otero al ser embestido por la guagua Chevrolet."

Según la versión de la demandada, el Plymouth al llegar a la entrada de Vega Baja dobló súbitamente a la izquierda para entrar por la Calle Otero invadiendo el carril de la guagua comercial chocando el Plymouth a la guagua.

La demandada presentó el testimonio del conductor de la guagua de nombre Alfredo Sáez, del Juez de Paz Christian Thillet y de otro testigo llamado Rafael Martínez Vázquez.

La parte demandante presentó en evidencia una fotografía tomada por la policía donde aparecen los vehículos según quedaron luego del accidente. Se marcó Exhibit I de los Demandantes. La demandada presentó en evidencia una foto tomada al otro día, cuando ya los vehículos habían sido movidos, con el propósito de que pudieran observarse mejor las averías sufridas por cada uno de los vehículos. Se marcó Exhibit I de la Demandada.

Sin duda, debido al largo tiempo transcurrido desde que se celebró la vista hasta que se falló el caso, el juez de instancia confundió estas dos piezas de evidencia y al aquilatar la prueba hizo constar que no le daba crédito a los testigos de los demandados porque según el juez sentenciador ellos habían declarado que la posición de los vehículos después del accidente era la que aparecía en la foto presentada por la parte demandada, cuando de la transcripción de evidencia surge que eso no era así.

Expresa el juez sentenciador:

"El Tribunal no da crédito alguno a los testimonios prestados por el demandado Alfredo Sáez Rodríguez, Juez de Paz Christian Thillet y Rafael Martínez Vázquez en el sentido de que la posición de los vehículos después del accidente es como aparece en el Exhibit I del demandado, o sea, el automóvil totalmente fuera del área de rodaje mirando hacia San Juan y la guagua al frente del mismo con su parte delantera en dirección hacia la carretera

número dos. Esta versión es increíble e insostenible. El policía que acudió al sitio de los hechos describió la posición de los vehículos después del accidente en la forma que se expresa en la conclusión de hecho número nueve que es la misma posición que revela la fotografía marcada como Exhibit I del demandante, que es una fotografía de la policía.

El accidente ocurrió al anochecer y es evidente que la fotografía marcada como Exhibit I del demandante fue de noche. Los testigos del demandado Alfredo Sáez, el Juez de Paz Christian Thillet y Rafael Martínez Vázquez, han apoyado sus testimonios, en cuanto a la posición en que quedaron los vehículos, en la fotografía que es el Exhibit I del demandado. Resulta por demás obvio que tales testigos no deben merecer crédito por cuanto el Exhibit I del demandado es una fotografía evidentemente tomada de día cuando ya los vehículos habían sido movidos y están en una posición distinta a la del Exhibit I del demandante. Hemos examinado con detenimiento ambas fotos. Las personas que aparecen en la fotografía ofrecida por los demandados son personas distintas a las que aparecen en la fotografía presentada por los demandantes. En esta última aparecen los policías investigadores. En la ofrecida por los demandados no aparecen los policías. En la fotografía de los demandados al fondo se ve el follaje y los montes y se advierte una sombra que se proyecta de este a oeste indicativa de que el sol brillaba en los momentos en que fue tomada. En la fotografía presentada por los demandantes no hay follaje ni montañas al fondo de los vehículos ni sombra alguna proyectada por el sol; por el contrario, el conjunto de la fotografía demuestra que ésta fue tomada de noche."

Examinemos primero el testimonio de Alfredo Sáez, conductor de la guagua asegurada. El abogado de la demandada le pregunta sobre la condición del automóvil Plymouth y le muestra la foto que tenía Identificación 2 de la demandada. El juez aclara que no está presentada en evidencia; el abogado de la parte demandante comenta que la foto muestra dónde pusieron los carros después de moverlos y el propio juez aclara que el testigo "Va a relacionar las condiciones de los automóviles después del choque, no la posición." Se presenta en evidencia y se marca Exhibit I de la Demandada. A una

pregunta del abogado de los demandados mostrándole la foto el testigo contesta: "Quedaron exactamente en ese estado." El juez interviene una vez más y expresa: "La pregunta es que si esa fotografía, el estado de esos automóviles, cómo compara con el estado de los automóviles, según los vio allí. No la posición sino el estado." El testigo contesta: "Me referí al contestar en cuanto al estado. Que estaba en esas mismas condiciones que muestra la fotografía." Ver T.E. págs. 63–65, Vol. VI.

Tomemos ahora la declaración del Juez de Paz Christian Thillet. El abogado de la demandada le muestra el Exhibit I de los demandantes y le dice que la observe cuidadosamente y entonces le pregunta que cómo comparaba lo revelado en la foto con la posición de los vehículos según observada por él al llegar al lugar del accidente y contesta: "Esa fue la forma en que estaban cuando yo llegué." T.E. págs. 2–3, Vol. VI. Y a la pág. 25–26 al declarar el otro testigo Rafael Martínez Vázquez, el abogado le presenta la foto (Exhibit I Demandante) y le hace la misma pregunta y contesta: "Así como está en la foto, así mismo quedaron."

Vemos pues que no hay base alguna en la declaración de estos tres testigos, para afirmar que ellos declararon que la posición en que quedaron los vehículos después del accidente era la que aparecía en la foto presentada en evidencia por la parte demandada. Expresamente hicieron constar que la posición en que quedaron era la que aparecía en la foto presentada por la parte demandante.

■ Como no hay base para la determinación del juez sentenciador de no dar crédito a los testigos de la parte demandada, procede examinar toda la prueba testifical y documental presentada con el propósito de hacer una determinación de cómo ocurrió el accidente.

El juez sentenciador afirma dio especial crédito a la declaración del oficial policíaco Pantojas antes transcrita.

En la fotografía presentada por la propia parte demandante (Exhibit I Demandante) no aparece el aro doblado y tampoco se ve la "huella sobre el área de rodaje que venía a morir precisamente debajo de la rueda izquierda delantera en el sitio donde quedó finalmente el Plymouth después del impacto.", a que hace referencia el Sargento Pantojas.

Es interesante notar que este testigo, al declarar ante el fiscal a raíz del accidente, no le mencionó estas observaciones. Es más de un año después de ocurrido el accidente que hace referencia a ellas en una deposición que le tomó la propia parte demandante y que luego repitió en el juicio. Al preguntársele por qué no le había informado sobre esas observaciones al fiscal, contestó que no se le había preguntado. Confrontado con un informe rendido a raíz del accidente donde expresaba que el Plymouth "al llegar al sitio de los hechos dobló súbitamente a la izquierda para entrar por la calle Tulio López Ramírez invadiendo el carril del auto dos [guagua comercial] que corría en dirección contraria—Oeste a Este—chocando ambos vehículos con los resultados antes expuestos" explicó que en esa ocasión sólo había interrogado al conductor de la guagua comercial. Todas estas circunstancias nos hacen concluir que no merece crédito alguno su testimonio.

En la determinación de hechos Núm. 4 el juez afirma que el conductor de la guagua comercial "testificó que el día de los hechos se había dado el 'palo', o sea había ingerido licor." Nada hay en la deposición prestada por Alfredo Sáez, conductor de la guagua comercial, ni en el testimonio prestado en corte de lo cual puede inferirse que éste admitió que había ingerido licor el día del accidente.

El juez de paz que estuvo en el sitio junto con el Sargento Pantojas declaró que los cristales rotos aparecían al lado izquierdo de la carretera. Declaró que "esos residuos de cristales y sucio estaban a la derecha, digo, concentrados en la derecha viniendo de Manatí hacia Vega Baja, o sea a la izquierda de Vega Alta hacia Vega Baja, ahora había más

restos dispersos pero la mayor parte estaba entre la línea blanca, hacia la izquierda."

Este testimonio y un examen de las fotografías presentadas en evidencia nos hace llegar a la conclusión que el accidente ocurrió en la forma que lo relata la prueba de la demandada. Es evidente que la guagua comercial fue impactada por la parte izquierda delantera, pero recibiendo el impacto de lado. El Plymouth demuestra el impacto completamente de frente y la forma en que quedaron los vehículos según el Exhibit I de la demandante así lo confirma.

Procede por lo tanto *revocar la sentencia recurrida y dictar otra declarando sin lugar la demanda.*

El Juez Presidente, Señor Negrón Fernández no intervino al igual que el Juez Asociado, Señor Martínez Muñoz.