Sociedad de Gananciales Constituida entre Doña Alberta Burgos Pagán y Don Ángel Ortiz Santiago, etc., demandantes y recurridos, *v.* Commercial Insurance Co., Colgate Palmolive Company of Puerto Rico et al., Autoridad de las Fuentes Fluviales de Puerto Rico, demandadas y recurrente la última.

*Número*: R-71-200      *Resuelto*: 27 de noviembre de 1973

*Aladino Torres Rivera,* abogado de la Autoridad de las Fuentes Fluviales de Puerto Rico, recurrente; *Guillermo Bauzá, Carlos Bauzá, Otto Bauzá, M. Bauzá Rolón* y *Obdulio Bauzá,* abogados de los recurridos.

PER CURIAM: Este es un caso de daños y perjuicios en el cual prevaleció en el tribunal de instancia la teoría de la parte demandante al efecto de que la niña de 12 años Carmen Elisa Ortiz quedó afectada con episodios histéricos de conversión como consecuencia de un susto al apagarse el televisor que estaba mirando y sentir un estruendo, por acción de un camión que al pasar arrancó el contador de su casa y los cables de energía eléctrica tendidos sobre la calle. El tribunal a quo distribuyó la culpa asignando 60% de responsabilidad a la compañía operadora del camión, y 40% a la Autoridad de las Fuentes Fluviales de Puerto Rico por no estar las líneas de energía eléctrica a la altura que demandan los reglamentos de seguridad. Sólo ha recurrido la Autoridad de las Fuentes Fluviales. Hemos examinado cuidadosamente la transcripción de la evidencia oral, así como toda la prueba documental y pericial admitida y llegado a la conclusión de que no se estableció en juicio la negligencia de la Autoridad de las Fuentes Fluviales y que incidió el tribunal de instancia en la apreciación de la prueba.

El accidente originador del alegado trauma ocurre el 3 de abril de 1961. La primera demanda se radica el 3 de octubre de 1961 y en su párrafo segundo describe el accidente con un texto que no ha de variar en las cuatro demandas enmendadas que siguen, en el lenguaje siguiente:

"SEGUNDO: Que el día 3 de abril de 1961 y a eso de las dos de la tarde el camión marca Ford, tablilla 402-765 y en la Calle Europa de la Parada 21 de Santurce, Puerto Rico, debido a la negligencia y falta de cuidado del agente y empleado de la parte demandada, quien manejaba el referido camión al pegarse tanto a su derecha, al caminar en dirección de Sur hacia Norte, chocó contra la casa mencionada en el número 21 de la Calle Europa, llevándose consigo todos los cables conductores de energía eléctrica, destrozándolos y causando una fuerte explosión."

En esta demanda original no se incluye a la Autoridad de las Fuentes Fluviales como parte demandada. Tampoco se le incluye en la primera, segunda y tercera demandas enmendadas radicadas el 3 de febrero de 1965; 1ro. de abril de 1965; y 18 de mayo de 1967, respectivamente. No es hasta la "Cuarta Demanda Enmendada" que lleva fecha de 20 de junio de 1967 que se trae por primera vez a pleito a dicha corporación gubernamental, y no se le emplaza hasta el 28 de febrero de 1969, con una demora de 20 meses. Ya para esta fecha han desaparecido todas las estructuras del vecindario del lugar del accidente en la calle Europa, para dar paso a una obra pública y de nuevas vías de tránsito.

Cuando llega el pleito a juicio la prueba de la parte demandante cambia la teoría mantenida en las cinco ediciones de la demanda y en vez de sostener que el camión "chocó contra la casa" (lo que podría producir un gran ruido o estruendo) el testigo Torres Campos dice que el *truck* "no pegó bien [al colmado] pero pegó un poco" (T.E. To. III, pág. 15); luego en el contrainterrogatorio declara: (el camión no tocó el negocio) "Pegó casi pero no pegó. Quedó como a 4 pies." (T.E. To. III, pág. 33); la demandante Alberta Burgos, madre de la niña, dice que oyó una explosión bien grande;[1] que la hija perdió el conocimiento, ella la puso

---

[1] En todo caso no sería mayor que el ruido a que nos tienen acostumbrados los aviones que rompen la barrera del sonido o los cohetes de bombas de fiestas patronales.

en el piso y fue a abrir la puerta del negocio; que entonces vio el *truck* de Daniel Rivera pegado hacia la derecha (T.E. To. III, pág. 129). Ella no mencionó explosión cuando hizo un relato de lo ocurrido al policía investigador[2] (Informe de Accidente, Exh. 16, de los demandantes).

Miguel Ángel Rivera, chófer del *truck*, declara que no hubo explosión de clase alguna; que él recogió los cables caídos, envolvió las puntas en cinta eléctrica (*tape*) que lleva para "cualquier cosa que suceda" y los envolvió en el poste (T.E. To. III, pág. 305). El sitio del accidente es parte de la ruta que en el curso de su trabajo recorre este testigo chófer del camión. Nunca hasta ese día se había llevado los alambres, que caen cuando el camión se pega a la casa y arranca el contador.

El perito Ing. Electricista Wilfredo Blanco declara que un desprendimiento y rotura de alambres como el descrito no produce explosión ni ruido, sencillamente deja de fluir la corriente al igual que cuando se desconecta la caja de seguridad (T.E. To. IV, pág. 72–74), criterio científico que coincide con el conocimiento general; que la única consecuencia es la interrupción de la luz y fuerza eléctrica de la casa.

Para la fecha del accidente la niña cursaba el séptimo grado en la Escuela Superior "Albert Einstein", de Santurce. Su historial escolástico ofrecido en evidencia por los propios demandantes demuestra que su actuación académica no fue afectada ni sus estudios interrumpidos por el accidente; mantuvo el mismo promedio en sus calificaciones y se graduó de cuarto año en 1966, luego de alcanzar nota de "B" en asignaturas como álgebra, historia general y de Puerto Rico, biolo-

---

[2] El texto del informe de la policía dice:

"Se querelló la Sra. Alberta Burgos Pagán que frente a su residencia pasaba el auto antes mencionado y al Cafetín 'Gran Poder' ubicado en la Calle Europa #21 prop. del querellante aparentemente muy cerca o pegado a dicho negocio tumbándole el Contador de la Luz causándole daños a las neveras que hay en dicho cafetín ya que dejaron de trabajar. Caso sometido al Hon. Juez Torres Marrero quien resolvió el caso Casual."

gía, maquinilla, y educación física; y nota de "C" en geometría, química, inglés, español, y economía doméstica. (Exh. 10 de los demandantes.) Continuó estudios en el Instituto Tecnológico. A la fecha del juicio tiene 23 años, es empleada del Gobierno de Puerto Rico y trabaja en Servicios Sociales, en la Parada 21. (T.E. To. III, págs. 162–163.) La joven demandante Carmen Elisa estuvo presente en Sala por la duración del juicio que fue de siete días, y no declaró.

El 9 de junio de 1967, pasados seis años del accidente, el siquiatra Dr. A. López Cumpiano examina a Carmen Elisa y expide el siguiente certificado:

"Certifico que la Srta. Carmen E. Ortiz Burgos con residencia en el Edificio 5 Apartamento 38, Caserío Manuel A. Pérez en Río Piedras y de 19 años de edad ha estado bajo tratamiento en esta Clínica Externa de Psiquiatría desde el 23 de marzo de 1967. El diagnóstico actual de dicha joven es de una Reacción de Ansiedad de leve a moderada y está bajo medicación actualmente de Mellaril 25 mg. dos veces diarias.

No hemos podido establecer la relación causal de su condición emocional presente. Aunque la madre de la paciente la establece a partir de un choque ocurrido el día 3 de abril de 1961 al frente de su casa pero esto es meramente especulativo.

Se expide este certificado a petición escrita de la madre de la paciente y para lo que diere lugar."

Más luego en el juicio este mismo médico se ha de revocar y dice que la joven padece de neurosis de conversión trazable al accidente. Para establecer nexos de causalidad entre accidente y condición de la joven la prueba médica descansa en la *explosión* informada por la madre como gatillo que desencadenó la reacción histérica (declaración del Dr. López Cumpiano, T.E. To. III, pág. 552). Si no hubo explosión, como indica la evidencia más confiable, se rompe el vínculo de causalidad (declaración del Dr. López Cumpiano, T.E. To. III, pág. 611). Generalizando sobre el síndrome de conversión declara este médico, a las págs. 579 y 580, To. III, T.E., lo siguiente:

"Vamos a ponerlo así.

En Puerto Rico tenemos que el pueblo nuestro era uno de los pueblos donde más reacción de conversión hay en el mundo.

O sea, es parte de nuestro pueblo.

Bien, han escrito, vienen siquiatras a escribir lo que llaman el mal de pelea, reacción de ansiedad, un sinnúmero de hombres ahí.

O sea, en nuestra cultura es muy frecuente la reacción de conversión.

Algunos autores dicen que a veces, este, que eso es casi como, o sea, la persona se defiende más para caer en un brote síquico, recurren más a estos mecanismos de conversión, o sea, que una señora salga de momento corriendo, gritando, este, rasgándose la ropa, forcejeando, digo, eso lo hemos visto a diario aquí en Puerto Rico.

O sea, que es parte de nuestra personalidad aquí, puertorriqueña."

Esta aseveración, en cuanto señala a otra causa excitante como originaria de la condición síquica en esta joven, coincide con otro criterio médico vertido en su historial en el Centro Médico (Exh. 18 de los demandantes) de 14 de septiembre de 1968 que expresa:

*"Examen Mental*

P.T. (paciente) 20 años, abordable, coherente y lógica, orientada en tres esferas [ilegible]. Ansiosa. Dice que a veces se le va la mente y oye que la llaman. Le da por ponerse triste.

P.T. (paciente) es hija única dependiente de madre aunque se liberta y busca madurar por sí sola. Los dolores de cabeza y síntoma 'nerviosa' pueden ser una protesta inconsciente a sus deseos de independizarse pero no puede por influencia materna inconsciente.

*Diagnóstico*

Ansiedad con [ilegible]." (Exh. 18 de los demandantes.)

Aparte de que la evidencia pericial médica, aportada únicamente por la parte demandante adolece de los conflictos intrínsecos señalados y choca con la realidad de que esta joven no sufre perjuicios en su vida escolar, manteniendo su

promedio satisfactorio que le permitió graduarse y obtener un empleo gubernamental, no consideramos digna de crédito la prueba que tiende a establecer la ocurrencia de una explosión.

La única negligencia imputada a la Autoridad de las Fuentes Fluviales es que "mantenía los cables eléctricos . . . a una altura menor a la que requiere la Ley." (párrafo noveno, cuarta demanda enmendada). Sobre este extremo concluyó el tribunal de instancia que dichos alambres estaban a una altura menor de 18 pies que es la señalada en el Reglamento de la Autoridad. La conclusión es especulativa tratando de reconstruir una topografía y unas estructuras ya desaparecidas, y errónea por descartar el detalle de que mientras el camión pasó por ese sitio de la calle Europa continuamente no se llevó los alambres tendidos sobre la calle; es sólo cuando se desvía a la derecha, se pega a la casa y ". . . tumbándole el Contador" que éste se trae los alambres al suelo. (Informe de la policía; declaración del chófer Rivera, T.E. To. III, pág. 304.) La dificultad para fijar la altura de los alambres sobre la calle no pudo ser superada por el juez sentenciador quien se limitó a decir que estaban a menos de 18 pies. ¿Cuánto menos? Si lo que faltaban eran centímetros sería inaceptable la adjudicación de negligencia contra la Autoridad habida cuenta de que para zonas urbanas el Código Nacional de Seguridad Eléctrica aprueba una altura de 16 pies. Código citado, ed. 1948, págs. 108–9. En igual forma se pronuncian las Reglas del Departamento de Comercio de los Estados Unidos sobre Instalación y Conservación de Suministro de Energía Eléctrica y Líneas de Comunicación (*Safety Rules for the Installation & Maintenance for Electric Supply and Communication Lines*), editadas en 1961, págs. 56–57.

Las conclusiones del tribunal de instancia son claramente erróneas como lo demuestra el análisis de la evidencia aquí hecha. La prueba conduce a la adopción de un criterio dis-

tinto tanto en el aspecto puramente factual, como en el pericial o científico. *Rodríguez* v. *Sáez Rodríguez*, 100 D.P.R. 539, 546 (1972); *Ruiz Guardiola* v. *Sears Roebuck* (Martín, J.), 100 D.P.R. 817 (1972); *Chico de la Rosa* v. *Goetz* (Rigau, J.), 90 D.P.R. 316, 321 (1964); *Ortiz Rodríguez* v. *A.F.F.* (Blanco Lugo, J.), 94 D.P.R. 546 (1967); *E.L.A.* v. *Fonalledas Córdova* (Blanco Lugo, J.), 84 D.P.R. 573 (1962).

La sentencia revisada dictada el 30 de junio de 1971 por el Tribunal Superior, Sala de San Juan, *será revocada, y se declarará sin lugar la demanda en cuanto afecta a la Autoridad de las Fuentes Fluviales de Puerto Rico.*

El Juez Asociado Señor Irizarry Yunqué no intervino.