Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
Marilyn Sepúlveda Torres (“Sepúlveda Torres”), Luis E. Soto Soto (Soto Soto) y la Sociedad de Gananciales compuesta por éstos (los “apelantes”) solicitan la revocación de una decisión emitida en corte abierta por el Tribunal de Primera Instancia, Sala Superior de Arecibo (el “TPF) el 2 de agosto de 2002, notificada la minuta en que fue recogida, el 5 de ese mes y año. Mediante el dictamen se declaró ha lugar una moción de desestimación de la Autoridad de Energía Eléctrica y Héctor M. Pérez Ríos (los “apelados ’) a tenor con la Regla 39.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.
Tras otros incidentes, y luego de que el 17 de diciembre de 2002, la representación legal de los apelantes presentara su Proyecto de Exposición Narrativa de la Prueba, ordenamos a los apelados presentar las enmiendas u objeciones, si algunas, que estimaran pertinentes a dicho proyecto. Transcurridos más de cuatro (4) meses sin que los apelados respondieran, el 27 de mayo de 2003 emitimos una Resolución aprobando el Proyecto de Exposición Narrativa de la Prueba presentada por los apelantes. Posteriormente, los apelados presentaron su alegato. Resolvemos con el beneficio de los autos originales, los escritos y de la Exposición Narrativa de la Prueba (ENP).
II
El presente caso surge a raíz de un lamentable accidente de tránsito ocurrido el 14 de febrero de 2000 en horas de la tarde, en la carretera 146, kilómetro 12, en dirección del Municipio de Jayuya al Municipio de Ciales, en el cual perdió la vida el infante de quince (15) meses de edad, Luis Y. Soto Sepúlveda, quien viajaba con su madre Sepúlveda Torres y su hermana. El 13 de febrero de 2001, los apelantes, padres del menor *879 fallecido, presentaron una demanda contra los apelados, Autoridad de Energía Eléctrica (AEE) y Héctor Pérez Ríos, su empleado, que conducía y controlaba el vehículo envuelto en el accidente. El accidente ocurrió cuando el vehículo Mitsubishi, Coupe (1999), tablilla DHL-512, conducido por Sepúlveda Torres por la referida vía, impactó el vehículo que le precedía conducido por Nataniel Ledesma Dávila (Ledesma Dávila); éste frenó repentinamente tras encontrarse que la vía de rodaje en que discurría estaba obstruida por el vehículo de la AEE, el que se encontraba estacionado en dirección opuesta al tránsito, ocupando parte del carril derecho de la referida vía.
Como resultado de la negligencia de Pérez Ríos, conductor de la AEE, se desencadenaron varios eventos que culminaron, como hemos informado, en la muerte del hijo menor de los apelantes. Por los sufrimientos y angustias sufridos, éstos reclamaron trescientos cincuenta y cinco mil dólares ($355,000) más los gastos, costas y una suma razonable en concepto de honorarios de abogado.
El 23 de enero de 2001, es decir, un mes antes de presentada la demanda, el Estado presentó contra Sepúlveda Torres una denuncia por infracción al Artículo 87 del Código Penal de Puerto Rico, 33 L.P.R.A. § 4006 (Imprudencia Crasa o Temeraria al Conducir Vehículo de Motor). En esa ocasión se determinó causa probable para su arresto fijándosele cien dólares ($100) de fianza. En la denuncia se alegó que la señora Sepúlveda Torres conducía su vehículo con tal descuido, imprudencia crasa o temeraria, mostrando un absoluto menosprecio de la seguridad de los demás, consistente en que sin guardar la distancia requerida entre vehículos, llevando a dos (2) menores de edad sin el asiento protector y sin cinturones de seguridad, sin tomar las debidas medidas de seguridad, impactó con la parte delantera de su vehículo a la parte trasera del vehículo conducido por Nathaniel Ledesma Dávila, ocasionando que la menor Keisha Soto Sepúlveda resultara con heridas leves y el menor Luis Y. Soto Sepúlveda resultara con heridas graves que le ocasionaron la muerte.
En la vista preliminar celebrada 15 de mayo de 2001, no se encontró existencia de causa probable para acusar a Sepúlveda Torres. El Ministerio Público no solicitó vista preliminar en alzada, convirtiéndose la determinación de no causa en final y firme.
Por su parte, los demandados, en su contestación a la demanda, negaron negligencia y presentaron una reconvención. Aceptaron que el vehículo conducido por Pérez Ríos se encontraba estacionado en una curva frente a una residencia (alegación número 6 de la demanda); no obstante, negaron que estuviera ocupando parte del carril derecho obstruyendo el flujo normal de los vehículos. En cuanto a que Sepúlveda Torres no tuvo tiempo para reaccionar a la inesperada actuación de Ledesma Dávila, conductor del vehículo que le precedía (alegación número 8 de la demanda), expresaron que ello ocurrió porque Sepúlveda Torres “no guardó la distancia requerida y tampoco conducía su vehículo a una velocidad prudente y razonable que le permitiera detener el mismo antes del impacto”. Argüyeron, entre sus defensas afirmativas, que los hechos tal y como se alegaron en la demanda eran la consecuencia lógica de los actos de la propia señora Sepúlveda Torres, por lo que los demandantes estaban impedidos de ir contra sus propios actos.
En su reconvención, alegaron, en lo pertinente, que conforme al Informe de Accidente de la Policía, Sepúlveda Torres manejaba el vehículo envuelto en el accidente sin tener licencia para ello; que conducía a una velocidad mayor a la permitida por ley; no guardaba la distancia entre su auto y el que le precedía, razón por la cual lo impactó por la parte posterior cuando frenó súbitamente; que llevaba en su vehículo a su pequeña hija y a su hijo de un (1) año y tres (3) meses en el asiento delantero, sin utilizar el cinturón de seguridad y sin tener el asiento protector requerido por ley; que de ser cierto lo señalado, Sepúlveda Torres incurrió en negligencia crasa y temeraria, lo que constituyó la causa próxima y eficiente para la ocurrencia de tan lamentable y desgraciado accidente. Por último alegó que en la eventualidad de que vinieran obligados a responder a los demandantes, “éstos a su vez también deben venir obligados a responder proporcionalmente en todo o en parte a los [demandados]”.
*880 En respuesta a la reconvención, la señora Sepúlveda Torres admitió que no tenía licencia que le autorizara a conducir vehículos de motor y que sus dos (2) hijos iban sin el asiento protector estando al menos uno (1) de ellos en el asiento del frente del vehículo. Negó, sin embargo, que no tuvieran puestos los cinturones de seguridad. Levantaron como defensa afirmativa la de cosa juzgada en su modalidad de impedimento colateral por existir una determinación final y firme de no-existencia de causa probable para acusar por negligencia alguna a la señora Sepúlveda Torres.
Preparado y presentado el informe de Conferencia con Antelación al Juicio, las partes acordaron bifurcar procedimientos. A esos fines, se dilucidaría en primera instancia el aspecto de la negligencia, y de ser necesario, se celebraría posteriormente la vista de daños.
Así las cosas, y tras otros incidentes, en la vista de negligencia se estipularon varias fotografías de los vehículos involucrados en el accidente; fotografías del lugar del accidente y el Informe de Accidente de Tránsito cumplimentado por la Policía de Puerto Rico. En cuanto a prueba testifical, presentada por la parte demandante, según la ENP, declararon: a) Ledesma Dávila, el conductor del vehículo que precedía al de la señora Sepúlveda Torres, contra el cual ésta chocó; b) el policía Benedicto Oquendo, quien tuvo a cargo la investigación del accidente; y c) el codemandado Pérez Ríos, empleado de la AEE, quien controlaba y manejaba el vehículo de la AEE el día de los hechos.
a) Ledesma Dávila testificó que: a) el día del accidente transitaba por la zona rural a una velocidad aproximada de cuarenta millas por hora (40 MPH) y las condiciones del tiempo eran buenas (ENP, pág. 1); b) la señora Sepúlveda Torres guardaba entre dos (2) ó tres (3) vehículos de distancia, dependiendo de las curvas, y que en ningún momento la señora Sepúlveda Torres trató de rebasar su vehículo (ENP, pág. 2); c) cuando se proponía salir de una cuiya que había en la carretera, se percató que había un vehículo de la AEE estacionado frente a una residencia, en contra del tránsito y obstruyéndole su carril; d) en esos momentos, trató de pasarle por el' lado al vehículo de la AEE, utilizando el carril contrario, pero que no pudo hacerlo debido a que en esos momentos se encontró con otro vehículo que venía en dirección contraria, lo que lo llevó a frenar súbitamente para no impactar el “camión” de la AEE o al que discurría en dirección contraria; y e) no obstante, su automóvi fue impactado en la parte trasera por el vehículo que conducía la señora Sepúlveda Torres. (ENP, pág. 2.)
b) Benedicto Oquendo declaró que no encontró en la carretera, huellas o marcas de las llantas del vehículo de la señora Sepúlveda Torres; sí encontró las del otro vehículo accidentado. Por último, declaró que de su investigación surgió que la visibilidad en la curva de la cual salieron los dos vehículos accidentados, era de “doscientos (200) pies”. No obstante, durante el contrainterrogatorio, admitió que dicha medida no reflejaba realmente el área de visibilidad que tendría la señora Sepúlveda Torres al salir de la curva, pues la misma era menor a la indicada (ENP, pág. 3).
c) Héctor Pérez Ríos, tercer y último testigo, empleado de la AEE a cargo del vehículo de dicha agencia al momento del accidente, admitió haberse estacionado frente a una residencia, bloqueando “parcialmente” el carril de los que discurrían en dirección contraria, así como que su ubicación era en la salida de una curva. Declaró que no tomó ningún tipo de precaución al cruzarse de carril y estacionarse frente a la residencia; que no se estacionó al otro lado de la carretera porque le resultaba más fácil solicitar una información en cuanto a unas órdenes de trabajo que se proponía diligenciar cerca del área. Indicó, además, que no pudo observar la forma y manera en que conducían el primer testigo y la señora Sepúlveda Torres, ya que estaba hablando con una persona en la residencia donde había parado a verificar una información cuando escuchó la frenada, siendo entonces que dirigió su mirada al lugar del accidente. Informó, por último, que luego del accidente no se encontraba en el lugar de los hechos cuando llegó el agente de la policía a investigarlo, sino que se marchó antes, fue localizado y entrevistado con posterioridad al accidente (ENP, pág. 4)
*881 Terminada la prueba de la parte demandante, a solicitud de su representación legal, el TPI tomó conocimiento judicial de la Resolución de vista preliminar en el caso criminal por imprudencia crasa y temeraria contra la señora Sepúlveda Torres. Surgía de ésta, que el Hon. Edgardo Rivera García, magistrado que entendió en dicha vista, no encontró causa probable contra la señora Sepúlveda Torres. Sometido el aspecto de negligencia por la parte demandante, la parte demandada solicitó la desestimación de la demanda al amparo de la Regla 39.2(c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, la que fue declarada Ha Lugar.
En la minuta-dictamen, el Hon. Rafael A. Flores Díaz señaló que: a) el Tribunal no tenía duda alguna que el accidente ocurrió por la negligencia de la señora Sepúlveda Torres al conducir a una velocidad mayor a la permitida en la zona; b) que los daños sufridos por la parte demandante se debieron principalmente a su negligencia; c) que a base de las fotografías sometidas en evidencia, tomaba conocimiento que el vehículo conducido por la señora Sepúlveda Torres era de un modelo adelantado (1999) que tenía bolsas de aire; d) que tenía indicaciones de que no debían haber niños en el área de las bolsas; e) que los menores en esa área podían sufrir daños y hasta la muerte; y f) sin tomar en consideración esas medidas, manejó negligentemente infligiéndose los daños por los cuales solicitó compensación.
Señaló el Tribunal que el oficial de la Policía que investigó el accidente declaró que tomó las medidas en el área del accidente, las que describían que había una visibilidad de “200 pies.” Añadió que el accidente pudo haberse evitado. En conclusión, expresó, a su entender, que el grado de negligencia de la señora Sepúlveda Torres fue mayor a cualquier grado de negligencia que pudo haber tenido la parte demandada. En consideración a lo cual, como hemos mencionado, el TPI declaró ha lugar la solicitud de desestimación al amparo de la Regla 39.2 (c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. El, presentada por los apelados.
Inconforme, los apelantes hacen los siguientes señalamientos de error:

“Primer Error: Erró el Tribunal de Primera Instancia en la apreciación de la prueba considerando que se trataba de una solicitud de desestimación.

Segundo Error: Erró el Tribunal de Primera Instancia al dictar sentencia en violación a los parámetros y a la jurisprudencia que le exigía prudencia y ponderación al momento de dictar la misma.

Tercer Error: Erró el Honorable Tribunal de Primera Instancia al declarar sin lugar la solicitud de la parte demandante a los efectos de que la determinación en vista preliminar de no causa para acusar a la codemandante Marilyn Sepúlveda por el delito tipificado en los artículos 86 [Homicidio Involuntario] y 87 [Imprudencia Crasa o Temeraria al Conducir] del Código Penal de Puerto Rico, de la cual el Ministerio Público no acudió, en alzada, constituye cosa juzgada en su modalidad dé impedimento colateral por sentencia, en el caso de autos. ”

III
La Regla 39.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, trata sobre la desestimación de los pleitos. Por su parte, el apartado (c) de la referida regla dispone:

“(c) Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. ”

*882 Nuestro Tribunal Supremo ha resuelto que si la prueba de la parte demandante tiende a demostrar que “en algún grado” el demandado pudo haber sido negligente, entonces, la duda que surge requiere que el demandado presente su caso, lo que dará al tribunal una visión más completa de los hechos. Colombani v. Gobierno Municipal de Bayamón, 100 D.P.R. 120, 122 (1971).
Por otro lado, sabido es que el concepto “daño” comprende todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra. García Pagán v. Shiley Caribbean, 122 D.P.R. 193, 205-206 (1988). Como es sabido además, el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado; sin que la imprudencia concurrente del perjudicado exima de responsabilidad, aunque conlleva la reducción de la indemnización. Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. § 5141 (Art. 1802); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 176 (1996). Esto último se conoce como doctrina de la negligencia comparada, la cual fue adoptada en nuestra jurisdicción por disposición de la Ley Núm. 28 de 9 de junio de 1956, que adicionó la última oración del Art. 1802. H.M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da ed., San Juan, Publicaciones. J.T.S., 1986.
Con relación a esta doctrina, Brau del Toro, op. cit, señala lo siguiente:

“Conforme a esta doctrina, la que impera al presente en Puerto Rico, la negligencia concurrente o contribuyente del demandante (y la asunción de riesgos por éste), sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad a éste.

Se ha dicho que esta norma tiende a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes, conforme a la proporción de su descuido y negligencia. Requiere que en todos los casos, el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción (o la percentila) de responsabilidad o negligencia que corresponde a cada parte, y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad. ”

Por lo tanto, el referido Art. 1802 enuncia la norma genérica que prohíbe causar daño a otro mediante conducta activa o pasiva, sin que la participación del demandante o de su causante, exima del derecho a ser reparado.
Como hemos mencionado, para que exista responsabilidad civil bajo el citado artículo, es necesario que concurran los siguientes elementos: un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. (Citas Omitidas) Toro Aponte v. E.L.A., 142 D.P.R. 464, 472-473 (1997). Por otro lado, los elementos que han de considerarse en la determinación de si una omisión genera responsabilidad son: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuricidad, y (2) si de haberse realizado el acto omitido, se hubiera evitado el daño. (Citas Omitidas) Tormos Arroyo v. D.I.P., 140 D.P.R. 265, 271 (1996).
“[LJa negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplirse con el deber. Dicho de otro modo, “un daño no genera una causa de acción por negligencia, si dicho daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable. ” Colón González v. Tienda K Mart, Op. de 26 de junio de 2001, 2001 J.T.S. 98, a la pág. 1483; citando a Herminio Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones JTS, 1989, pág. 185. Véase además, Ocasio Juarbe v. Eastern Airlines, 125 D.P.R. 410 (1990); Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 705-706 (1982); Salvá Matos v. A. Díaz Const. Corp., 95 D.P.R. 902, 906-908 (1968).
Es precisamente del inciso dos antes enumerado, que surge el deber de previsibilidad que da lugar a la *883 responsabilidad bajo el Art. 1802. Claro está, esto no quiere decir que la persona esté obligada a prever todos los posibles riesgos que puedan concebirse en una determinada situación, pues prácticamente se convertiría entonces en una responsabilidad absoluta. Pacheco v. A.F.F., 112 D.P.R. 296, 300 (1982); Colón González, 2001 J.T.S. 98, a la pág. 1483. “El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad... sino a aquél que es probable que suceda y que llevaría a una persona prudente a anticiparlo.” Hernández v. Gobierno de la Capital, 81 D.P.R. 1031, 1038 (1960).
Cabe señalar que “[e]l deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible”. De otro lado, “[l]a culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso. La diligencia exigible es la que cabe esperar del ser humano medio, el buen paterfamilias. Si el daño es previsible por éste, hay responsabilidad. Si no es previsible, estamos generalmente en presencia de un caso fortuito.” (Citas Omitidas) Tormos Arroyo v. D.I.P., supra, a la pág. 274.
Por otra parte, y como indicamos previamente, en nuestra jurisdicción rige la doctrina de negligencia comparada, conforme a la cual, cada actor responde por sus propios actos en la proporción en que haya contribuido al daño. Así pues, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada, es necesario analizar y considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante. Brau del Toro, Los Daños y Perjuicios Extracontractuales en P.R., supra.
A los fines de considerar la causa legal o causalidad productora de responsabilidad jurídica, en nuestro ordenamiento rige la teoría de la causalidad adecuada. Conforme a ella “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general”. (Citas Omitidas). Sociedad de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974); Jiménez v. Pelegrina Espinet, 112 D.P.R. 700 (1982); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 710 (1990). Esta normativa ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso sea imputable moralmente a su alegado autor, porque éste era una consecuencia previsible o voluntaria del acto negligente. Soto Cabral v. E.L.A., 138 D.P.R. 298, 317 (1995). Así pues, “un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirándolo retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto”. Torres Trumbull v. Pesquera, 97 D.P.R. 338, 343-344 (1969).
Siguiendo esta tónica en caso de concurrencia de causas, hemos resuelto que la cuestión a dilucidar es cuál de las causas fue la eficiente. Es decir, hay que estimar como decisiva la que por sus circunstancias determina el daño. Más aún, en un caso de concurrencia de culpas, cuando es evidente la desproporción entre culpas causantes de un daño, la mayor absorbe totalmente la otra y excluye la aplicación de la norma de negligencia comparada. Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 710 (1990). Véase además, Toro Lugo v. Ortiz Martínez, 113 D.P.R. 56 (1982).
Reiteradamente, nuestro Tribunal Supremo ha señalado que en cuanto a la apreciación de la prueba desfilada ante el tribunal de instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, la que dispone en lo pertinente:

“[LJas determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos...

Por ello, nuestro alto foro ha establecido que no debemos ser dados a intervenir con las determinaciones de hechos que hace un tribunal de instancia y a sustituir nuestro criterio por el del juzgador ante quien declararon 
*884
los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. Ramos Acosta v. Caparra Dairy Inc, 113 D.P.R. 357, 365 (1982).

... y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical, y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación...”. Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).
De ahí, la norma trillada de “no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto ”. Monllor Arzola v. Sociedad de Gananciales, 138 D.P.R. 600, 610 (1995); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 721 (1984). No obstante, “[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto. Lina apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal”. (Citas Omitidas.) Ramos Acosta, 113 D.P.R. a la pág. 947.
Así pues, los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que “del examen de la totalidad de la evidencia, el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida(Enfasis Nuestro.) Véase, Maryland Casualty Co. v. Quick Const. Corp., 90 D.P.R. 329, 336 (1964). Además, es principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aun adoptar su propio criterio en la apreciación de ella. (Enfasis Nuestro.) Cruz v. Centro Médico de P.R., 113 D.P.R. 719, 721 (1983); Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982); Zambrana v. Hospital Santo Asilo de Damas, 109 D.P.R. 517, 522 (1980). No obstante, nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y la prueba documental. En ausencia de prueba, no es nuestra función establecer a este nivel apelativo los elementos requeridos por el Art. 1802. Ríos Ruiz v. Mark, 119 D.P.R. 816, 821-822 (1987).
Expuesto lo anterior y aclarado el alcance de nuestra función revisora, pasemos a considerar, entre otros: a) ¿cuál fue la causa eficiente del accidente que provocó los hechos ante nuestra consideración?; b) ¿cómo llegó el TPI a determinar que la señora Sepúlveda Torres iba a exceso de velocidad si de los testimonios vertidos recogidos en la ENP, no surge dicha conclusión?
Conforme a lo ya expresado, Ledesma Dávila, cuyo vehículo fuera impactado por el de la señora Sepúlveda Torres, testificó que antes del accidente transitaba a la velocidad permitida para la zona rural (40 MPH) y que la señora Sepúlveda Torres, quien le precedía, guardaba entre dos (2) ó tres (3) vehículos de distancia, dependiendo de las curvas y que en ningún momento ésta trató de rebasar su vehículo; al proponerse salir de la curva existente en la carretera, se percató que había un vehículo de la AEE estacionado frente a una residencia, en contra del tránsito y obstruyéndole su carril; trató de pasarle por el lado a ese vehículo utilizando el carril contrario, lo que no pudo hacer porque en esos momentos se encontró con otro vehículo que venía en dirección contraria, por lo que tuvo que frenar súbitamente para no impactar el vehículo de la AEE, o al que venía en dirección contraria; finalmente su vehículo fue impactado por el de la señora Sepúlveda Torres. En el evento en que la señora Sepúlveda Torres hubiese ido a una velocidad exagerada, pudo entonces haber tratado de rebasar al vehículo del testigo, cosa que no sucedió.
*885 Por otro lado, el testimonio de Benedicto Oquendo, policía investigador del accidente, difiere de lo consignado por el TPI en su determinación. Este declaró que de su investigación surgió que la visibilidad en la curva donde ocurrieron los hechos era de aproximadamente unos doscientos (200) pies. A preguntas de la representación legal de la señora Sepúlveda Torres, admitió que dicha medida no reflejaba realmente el área de visibilidad que tendría la señora Sepúlveda Torres al salir de la curva, pues era menor a la indicada. En adición, no encontró en la carretera, marcas o huellas de las llantas del vehículo conducido por la señora Sepúlveda Torres.
Por último, Pérez Ríos, el empleado de la AEE, admitió haberse estacionado, bloqueando parcialmente el carril de los que discurrían en dirección contraria, así como que su ubicación era en la salida de una curva. Declaró que no se había percatado del vehículo de Ledesma Dávila y del de la señora Sepúlveda Torres, hasta que escuchó el frenazo que dio paso al accidente. Ese testimonio asevera negligencia por parte del empleado y demuestra su falta de previsión de no estar pendiente al flujo vehicular mientras tenía su vehículo detenido ilegalmente en la carretera en contra del tránsito y obstruyendo el libre paso en un trayecto de curvas.
La representación legal de la señora Sepúlveda Torres, reconoce que su actuación constituyó negligencia contributors, dado a que el accidente fue el resultado de dos (2) factores: la negligencia del conductor de la AEE y de la señora Sepúlveda Torres, quien no utilizó el asiento protector para la seguridad de sus hijos (Apelación, pág. 8), y ni guardaba la distancia recomendada de un vehículo por cada diez millas por hora (10 MPH). Tal y como señalan los apelantes, el conductor de la AEE no sólo estacionó el vehículo en dirección contraria al tránsito, sino que lo hizo obstruyendo el flujo vehicular y en un área de curvas, actos contrarios a la ley y al orden público, así como a los reglamentos internos de la propia AEE.
Aun cuando la señora Sepúlveda Torres incurrió en negligencia, concluimos que la causa próxima o eficiente del accidente lo constituye la negligencia del empleado de la AEE, consistente en haber estacionado el vehículo de la AEE en una curva, contrario al, y obstruyendo, el tránsito. Nos apoyamos en los testimonios vertidos por los testigos en el juicio recogidos en la ENP, así como del examen minucioso efectuado a la prueba documental presentada, entre éstas, varias fotografías (19) de los vehículos envueltos en el accidente, el área de ocurrencia, Exhibits 1-A a la 1-S por estipulación de las partes. En consideración a lo expuesto, los errores primero y segundo fueron cometidos. Por otro lado, el tercer error relativo a cosa juzgada no fue cometido.
En consideración a lo cual, revocamos la sentencia apelada. En su consecuencia, ordenamos la continuación de los procedimientos ante el Tribunal de Primera Instancia, Sala Superior de Arecibo.
Así lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General